593 P.2d 684

**The STATE of Arizona, Appellee,**

v.

**James William COLEMAN, Appellant.**

**No. 2 CA–CR 1317.**

Court of Appeals of Arizona, Division 2.

Oct. 17, 1978.

Rehearing Denied Nov. 29, 1978.

Review Granted Dec. 19, 1978.

John A. LaSota, Jr., Atty. Gen., Phoenix by Philip G. Urry, Asst. Atty. Gen., Tucson, for appellee.

John M. Neis, Pima County Public Defender by Frederic J. Dardis and Allen G. Minker, Asst. Public Defenders, Tucson, for appellant.

## OPINION

HATHAWAY, Judge.

Appellant seeks reversal of his convictions of first degree burglary and aggravated assault. We affirm.

The facts are as follows. An assailant attacked the victim in her home at approximately 8:25 p. m. on September 21, 1976. The assailant fled when the victim screamed, but after the victim ran outside for help, he attacked her again by the side of the house. The assailant did not sexually molest her.

Police arrived at the victim's home shortly after the attacks. The victim described the assailant as a young, black male of medium build and height who wore a light shirt, dark pants and a blue knit hat with a green stripe. The police discovered footprints by the side of the house where the victim had been attacked. The prints had distinctive characteristics because of the design and the pattern of wear of the sole.

The police called a special dog-handling unit to the scene. The handler brought the dog to the prints, and the dog tracked them to a nearby housing project. The police discovered prints similar to those near the victim's house as they followed the dog.

A car patrol reached the project first. The police spotted appellant seated on an electrical box located in a mall between the buildings of the project. They approached appellant who was wearing a light shirt, dark pants and a green knit cap with a blue stripe and noticed he was barefoot. When asked where his shoes were, he pointed to his sister's apartment where the shoes were leaning against the wall. One officer walked over to the shoes, examined them, and made a gesture indicating that he thought the shoes matched the prints. At approximately the same time, the dog-handling unit arrived and the dog alerted on appellant. The police then arrested him.

Appellant raises three issues on appeal: (1) whether the prosecution proved beyond a reasonable doubt that the burglary occurred in the nighttime within the meaning of A.R.S. Sec. 13–302; (2) whether examination of his shoes was an unreasonable search and seizure within the meaning of the Fourth Amendment to the United States Constitution; (3) whether the trial court erred in denying his motions for mistrial.

1. A.R.S. Sec. 13–302, burglary in the first degree, requires proof that the burglary occurred in the nighttime. Appellant contends that because the prosecution did not prove the time the sun set on September 21, 1976, it failed to prove beyond a reasonable doubt that the burglary occurred in the nighttime. We disagree.

A.R.S. Sec. 13–301(2) defines "nighttime" as "the period between sunset and sunrise". The prosecution, however, need not prove the time the sun set if there is evidence sufficient to permit the jury to conclude beyond a reasonable doubt that the burglary occurred after sunset. *State v. Daniels*, 106 Ariz. 497, 478 P.2d 522 (1970). The victim testified that the assault occurred at about 8:25 p. m. and that it was then dark outside. This is sufficient to permit the jury to conclude beyond a reasonable doubt that the burglary occurred in the nighttime.

2. Appellant contends that the examination of his shoes was an unreasonable search and seizure. We disagree.

There was no Fourth Amendment search unless appellant had a reasonable expectation of privacy with respect to the physical characteristics of the soles of his shoes. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *State v. Dugan*, 113 Ariz. 354, 555 P.2d 108 (1976). Appellant did not have the required reasonable expectation.

*United States v. Dionisio*, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973), is apposite. In *Dionisio*, a grand jury subpoenaed respondent and several others seeking voice exemplars for comparison with incriminating recordings. Respondent refused to give an exemplar claiming that requiring him to produce an exemplar constituted a Fourth Amendment search. The Supreme Court held that there was no search because one does not have a reasonable expectation

of privacy with respect to the physical characteristics of one's voice. *Dionisio, supra.*

Examining the physical characteristics of the soles of appellant's shoes is like taking a voice exemplar. The police sought to compare the shoes with footprints just as the grand jury in *Dionisio* sought to compare the voice exemplar with recordings. Examination of such physical characteristics "involves none of the probing into an individual's private life and thoughts that marks an interrogation or search". *Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), quoted in *Dionisio, supra*, 410 U.S. at 15, 93 S.Ct. at 772, 35 L.Ed.2d at 80.

Nor does this case involve the dragnet procedure condemned in *Davis, supra*. Although we express no opinion regarding whether the police had probable cause to arrest appellant prior to examining the shoes, they did not investigate him at random. The victim's description and the dog's success in tracking appellant from the scene of the assault to the housing project sufficiently tied appellant to the crime for purposes of distinguishing *Davis*.

3. Appellant contends that the trial court erred in not granting his motions for mistrial. The alleged grounds for mistrial are as follows:

(A) In violation of the court's ruling on appellant's motion in limine, evidence was introduced that the sexual assault team responded to the victim's call to the police.

(B) In violation of another ruling on a motion in limine, the police witnesses testified that in their opinion appellant's shoes matched the footprints.

(C) There was insufficient foundation as to the reliability of the dog used to track appellant.

 The trial court has broad discretion as to granting a mistrial, and its refusal to grant one will be reversed only if the conduct urged as grounds for a mistrial was palpably improper and clearly injurious. *State v. Scott*, 24 Ariz.App. 203, 537 P.2d 40 (1975). Applying this standard, we find no abuse of discretion.

(A) The record is unclear whether the trial court ordered the prosecution not to introduce evidence that the sexual assault team responded to the victim's call to the police. Assuming arguendo that it had done so, defense counsel on cross-examination elicited the response which is now complained of. Appellant cannot claim that the prosecution violated an order or that the testimony was clearly injurious.

(B) The trial court ordered the prosecution to instruct its police witnesses to limit their testimony to observations. This order conforms to the requirements of *State v. Wynn*, 114 Ariz. 561, 562 P.2d 734 (App. 1977). Appellant contends that in three instances, police witnesses expressed their opinion that the shoes and footprints matched and that this violation required a mistrial.

The first instance involved Officer Whitten's testimony that after Officer Malm examined the shoes, he made a gesture indicating that the shoes matched the prints. Appellant made a general objection and asked that the testimony be stricken and that the jury be instructed to disregard it. The trial court overruled the objection and denied the motions. Because appellant failed to make a proper objection, the trial court did not err in its ruling. *State v. Taylor*, 99 Ariz. 85, 407 P.2d 59 (1965).

The second instance involved Officer Malm's testimony. He restricted his testimony to his observations. There is no error and therefore no basis for a mistrial.

The third instance involved Officer Morris' testimony that footprints discovered near the housing project were the same as the prints discovered near the victim's house. This officer was the handler of the dog. He did not testify that the footprints matched appellant's shoes. He merely stated that the same footprints that he was following led up to the sidewalk area in front of the housing project. The trial court sustained appellant's objection and advised the jury to disregard the opinion. There is no error and therefore no basis for mistrial.

(C) Appellant contends that there was insufficient foundation for the reliability of

the dog used to track him and that in the absence of a proper foundation, the testimony that the dog tracked appellant was so inherently prejudicial that a mistrial should have been granted. We disagree.

The majority view is that evidence of dog tracking is admissible provided there is a sufficient foundation regarding the dog's reliability. A proper foundation requires a showing of the training and qualifications of the dog and the circumstances of the tracking. Annot., 18 A.L.R.3d 1221.

There is evidence of the dog's training, the handler's experience, the preservation of the tracks at the victim's home, the manner in which the dog was placed on the trail, and the actual course of tracking. Appellant's only complaint is that the record of the dog's past performance did not include past failures. Although a record of failures should be kept to substantiate the continued reliability of the dog, this defect alone did not make the foundation insufficient.

Affirmed.

RICHMOND, C. J., and HOWARD, J., concur.