[No. 4176–II.   Division Two.   February 9, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v. JOHN W. YOUNG, JR., *Appellant.*

*Frank E. Morris,* for appellant.

*Patrick D. Sutherland, Prosecuting Attorney,* and *James Buckley, Deputy,* for respondent.

PETRIE, J.—John W. Young, Jr., appeals his conviction of second degree burglary. His contentions on appeal are that the warrantless seizure of incriminating evidence from an automobile and his warrantless arrest violated the federal and state constitutional prohibitions against unreasonable searches and seizures. We find that the police officers' actions were reasonable under the circumstances. Accordingly, we affirm the conviction.

The evidence presented at the suppression hearing established the following sequence of events. Shortly before 2 a.m. on March 11, 1979, Dennis Niles, a Lacey police officer on routine patrol, noticed an older model vehicle in a shopping center parking lot parked in an area not near

other cars or any businesses which were then open. Because it was unusual to see a car in that location at that time of the morning, Officer Niles noted its license number. He then continued his patrol. As he approached Mark–It Foods, a supermarket and pharmacy located 150 feet from the car, he heard a fire alarm and saw a fire door standing open. Other police officers assisted in securing the building and learned that a rear door to the store had been forced open.

With the building secure, Officer Niles returned to the lone automobile he had observed earlier. He saw that the driver's door was standing open approximately 2 feet, a condition he had not noticed when he first saw the car. Using his flashlight, Niles observed a screwdriver and a Stillson wrench on the front seat, torn pieces of yellow pages from several telephone directories on the floorboard in front of the driver's seat, and a claw hammer on the rear floorboard. He seized the hammer and the yellow pages. At trial, but not at the suppression hearing, Niles testified that the head of the hammer had bits of yellow paint on it. At trial, but not at the suppression hearing, Niles testified that one of the yellow pages advertised the Mark–It Pharmacy, and it was sitting on top of the others. The other yellow pages listed and advertised pharmacies in Tacoma.

By this time, the officers at the scene had learned from the radio dispatcher that the car was registered to a person with a Tacoma address. Because Tacoma is approximately 25 miles north of Lacey on Interstate 5, Officer Edward Sorger left the shopping center to check the northbound on–ramp of the freeway less than a mile away. At 3:25 a.m., Officer Sorger saw defendant standing next to the northbound on–ramp. He approached defendant and asked for identification. Mr. Young could produce no identification but gave his name as Michael Green and related a Tacoma address. Checking with the officers still at the shopping center by radio, Sorger learned the Tacoma address given by defendant matched the registered address which the

other officers had obtained from a license check of the suspect car. Sorger then arrested defendant on suspicion of burglary. En route to the police station, defendant told Sorger his correct name. At the police station he also told police that another person had been with him in the car. While defendant was in custody, police also seized the hat and jogging suit he had been wearing when arrested. Some time after the arrest, defendant acknowledged he had been in the suspect car, but he denied the burglary. The police asked defendant for authorization to search the car. He refused.

Defendant moved to suppress the items taken from the car and his person. After a hearing, the court found the police acted reasonably and denied the motion. At trial, presided over by a different superior court judge, a special agent from the Federal Bureau of Investigation laboratory testified that the paint chips taken from the hammer and defendant's hat matched samples taken from the forced supermarket door hinges. The seized items thus are the heart of the State's case against defendant.

█ Turning to defendant's arguments on appeal, we begin with the central issue of all Fourth Amendment analyses—whether the actions of the police officers were reasonable under the circumstances. *See United States v. Chadwick,* 433 U.S. 1, 9, 53 L. Ed. 2d 538, 97 S. Ct. 2476 (1977); *Cady v. Dombrowski,* 413 U.S. 433, 439, 37 L. Ed. 2d 706, 93 S. Ct. 2523 (1973).

The threshold question is whether the person invoking the protection of the Fourth Amendment

> can claim a "justifiable," a "reasonable," or a "legitimate expectation of privacy" that has been invaded by government action.

*Smith v. Maryland,* 442 U.S. 735, 740, 61 L. Ed. 2d 220, 99 S. Ct. 2577 (1979). In *Smith,* the United States Supreme Court thus indicated the determination of the applicability of the Fourth Amendment involves two separate inquiries:

1. Has the individual, by his actions, shown that he actually (subjectively) has an expectation of privacy in the place searched or things seized; and

2. Is society prepared to recognize this subjective expectation of privacy as legitimate? *Smith v. Maryland, supra* at 740.

█ In our analysis of the seizures here, we must be mindful that a person has a diminished expectation of privacy in the visible contents of an automobile parked in a public place. *United States v. Chadwick, supra,* 433 U.S. at 12–13; *South Dakota v. Opperman,* 428 U.S. 364, 367–68, 49 L. Ed. 2d 1000, 96 S. Ct. 3092 (1976). "What a person knowingly exposes to the public, . . . is not a subject of Fourth Amendment protection." *Katz v. United States,* ·389 U.S. 347, 351, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967). It has been held that a policeman who looks into a car parked in a public place and observes what is exposed to open view is not even conducting a "search" in the constitutional sense. *Cook v. Commonwealth,* 216 Va. 71, 74–75, 216 S.E.2d 48, 50 (1975). In *Cook,* the Supreme Court of Virginia noted at page 73:

> There can be little, if any, expectation of ʹprivacy when one parks his automobile on a public street and leaves therein, openly exposed to view, items of contraband or other evidence of crime.

*Accord, e.g., State v. Gedric,* 374 So. 2d 1192, 1194 (La. 1979); *Scales v. State,* 13 Md. App. 474, 477–78, 284 A.2d 45, 47 (1971); *Cf. State v. Manly,* 85 Wn.2d 120, 124, 530 P.2d 306 (1975) (no reasonable expectation of privacy in what could be seen through house window from street). *See generally* 1 W. LaFave, *Search and Seizure* § 2.2 (1978).

█ Nevertheless, defendant contends that because Officer Niles used a flashlight to view the interior of the car, he conducted a search unreasonable under the Fourth Amendment. He relies on an opinion of this court, *State v. Howard,* 7 Wn. App. 668, 502 P.2d 1043 (1972). His reliance is misplaced. In *Howard,* we felt bound by the unchallenged finding of the trial court that the use of a flashlight to view

the interior of the car was a search. We vacated the trial court's suppression order, however, because we viewed the "search" as reasonable in view of the officer's knowledge that generally Howard carried a weapon. *Howard* thus should not be read to hold that using a flashlight to observe what could be seen in a car parked in a public place constitutes a search in the constitutional sense. We hold, and thus align ourselves with the almost universal view, that such use of a flashlight is not a search at all.

> When the circumstances of a particular case are such that the police officer's observation would not have constituted a search had it occurred in daylight, then the fact that the officer used a flashlight to pierce the nighttime darkness does not transform his observation into a search.

*Marshall v. United States,* 422 F.2d 185, 189 (5th Cir. 1970); *accord, United States v. Johnson,* 506 F.2d 674, 676 (8th Cir. 1974); *see also United States v. Lee,* 274 U.S. 559, 563, 71 L. Ed. 1202, 47 S. Ct. 746 (1927) (Coast Guard use of searchlight to reveal contraband liquor on boat not search); *see generally* 1 W. LaFave, *Search and Seizure* 248 *et seq.* (1978).

██ Thus, the Fourth Amendment simply has no bearing on the manner in which the presence of the several tools and the yellow pages became police knowledge. Officer Niles did not testify either at trial or at the suppression hearing, that he could read the print on the yellow pages from outside the vehicle or that he could see the bits of yellow paint on the head of the hammer without having picked it up. Accordingly, the more serious question is whether his entry into the vehicle and his *seizure* of the hammer and the yellow pages violated the Fourth Amendment. The defendant's expectation of privacy of the observable contents of the car was diminished, but we cannot hold that he had no judicially cognizable expectation of privacy as to those contents. To justify the warrantless seizure, the police must have had probable cause to believe

the tools observed from outside the vehicle were instrumentalities of the crime *and* be faced with "emergent or exigent circumstances regarding the security and acquisition of incriminating evidence" which make it impracticable to obtain a warrant. *State v. Smith,* 88 Wn.2d 127, 137–38, 559 P.2d 970 (1977). Defendant does not dispute that there was probable cause to believe the visible items were evidence of a crime. He does contend, however, that the hammer, at least, was not visible. Nevertheless, he did not assign error to the trial court's finding that

> the tools located inside of the . . . vehicle were in plain view, and that Officer Niles observed these tools while looking into the interior of the defendant's vehicle.

Although the Washington Supreme Court has not yet ruled on the effect of the failure to assign error to findings in a suppression hearing, *see State v. Agee,* 89 Wn.2d 416, 423, 573 P.2d 355 (1977), we note in our independent evaluation of the evidence (*see State v. Daugherty,* 94 Wn.2d 263, 616 P.2d 649 (1980)) the only evidence on the question came from Officer Niles who testified he could see the hammer from outside the car. Absent rebuttal, the testimony clearly supports the finding. *See State v. Green,* 94 Wn.2d 216, 616 P.2d 628 (1980). We accept the trial court's finding both as an unchallenged verity and also as supported by substantial evidence.

The determinative question, then, is whether there were sufficient exigent circumstances to justify the seizure without a warrant. Inconvenience to the officers, of course, is insufficient to excuse the necessity to seek authorization from a magistrate. *Johnson v. United States,* 333 U.S. 10, 92 L. Ed. 436, 68 S. Ct. 367 (1948). It must be remembered, however, that when Niles seized the hammer he had knowledge that the tools observed from outside the vehicle were only likely burglary tools and the intrusion into the vehicle was limited to a seizure of (some of) the items already observed from the outside of what appeared to be a car from which someone had hastily departed late at night near the scene of a recent burglary. The police seized the

hammer and yellow pages, in part at least, to determine whether the probable "lead" observable to them more truly pointed toward a person or persons who committed the crime.

Although there are no precise guidelines as to what constitutes exigent circumstances, courts have upheld warrantless seizures from automobiles under more broadly defined exigent circumstances than those permitted for buildings. *See generally* 2 W. LaFave, *Search and Seizure* § 7.5, at 592 (1978). Other courts have found exigent circumstances where, as here, a defendant was still at large or where a defendant is in custody but his accomplices or others acting for him have not yet been apprehended. *E.g., United States v. Farnkoff,* 535 F.2d 661, 666 (1st Cir. 1976); *United States v. Bozada,* 473 F.2d 389, 390 (8th Cir.), *cert. denied,* 411 U.S. 969, 36 L. Ed. 2d 691, 93 S. Ct. 2161 (1973); *Scales v. State, supra* at 49. Combining the minimal expectation of privacy which defendant could reasonably and legitimately have had in the contents of the vehicle with the exigencies facing the officer at the scene, we hold these seizures were reasonable under the Fourth Amendment.

Defendant next urges that police violated the Fourth Amendment's prohibition against unreasonable seizure of his person when one of the officers approached him at the freeway on–ramp and asked for his identification. The threshold issue is whether the officer's actions in fact constituted a "detention" sufficient to constitute a "seizure" within the meaning of the Fourth Amendment. The lead opinion of *United States v. Mendenhall,* 446 U.S. 544, 64 L. Ed. 2d 497, 100 S. Ct. 1870 (1980), authored by Mr. Justice Stewart, joined by Mr. Justice Rehnquist, asserts that a police officer's approach to an individual coupled with an inquiry as to the individual's identification does not constitute a "seizure" of that individual. That lead opinion in *Mendenhall* in part II–A at pages 554–55 declared:

We conclude that a person has been "seized" within the meaning of the Fourth Amendment only if, in view of

all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.

(Footnote and citations omitted.)

Ordinarily we would grasp that language and hold that defendant was not "seized" when initially confronted by the officer at the ramp. We cannot escape the comments, however, in the concurring opinion of Mr. Justice Powell in *Mendenhall,* in which he was joined by the Chief Justice and Mr. Justice Blackmun (all of whom had concurred in other parts of the lead opinion but did not concur in part II–A). Footnote 1 of Mr. Justice Powell's concurring opinion declares in part:

I do not necessarily disagree with the views expressed in Part II–A. For me, the question whether the respondent in this case reasonably could have thought she was free to "walk away" when asked by two Government agents for her driver's license and ticket is extremely close.

Thus, we have no definitive holding which would lead us inescapably to the conclusion that defendant in the case at bench was not "seized" when he was approached and asked to identify himself to the police. Accordingly, for purposes of this opinion we assume, as did Mr. Justice Powell and the two Justices who joined him in *Mendenhall,* "that the stop did constitute a seizure." Thus we leave for future determination the question of whether an officer's "approach to identify" with no other display of force is actually a seizure in the constitutional sense.

■ The Fourth Amendment's protections apply to all *seizures* of the person, including even brief detentions when the test of reasonableness is less than the probable

cause required for a full custodial arrest. *Reid v. Georgia,* 448 U.S. 438, 440, 65 L. Ed. 2d 890, 100 S. Ct. 2752, 2753 (1980); *Adams v. Williams,* 407 U.S. 143, 146, 32 L. Ed. 2d 612, 92 S. Ct. 1921 (1972); *Davis v. Mississippi,* 394 U.S. 721, 22 L. Ed. 2d 676, 89 S. Ct. 1394 (1969); *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). The United States Supreme Court has noted that there is no "ready test" for determining the reasonableness of a particular detention, other than by balancing the governmental interests involved against the individual's Fourth Amendment privacy interests. *Terry v. Ohio, supra,* 392 U.S. at 21–22. This balance requires that "the facts upon which an intrusion is based be capable of measurement against 'an objective standard,' whether this be probable cause or a less stringent test." (Footnotes omitted.) *Delaware v. Prouse,* 440 U.S. 648, 654, 59 L. Ed. 2d 660, 99 S. Ct. 1391 (1979). Merely because a police officer lacks probable cause to arrest an individual, he need not shrug his shoulders and allow suspected criminal activity to continue or to escape his further scrutiny. *Adams v. Williams, supra* at 145. The Supreme Court has required, however, that the officer be able to point to "specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion . . ." that the individual is involved in criminal activity. *Delaware v. Prouse, supra* at 656, quoting *United States v. Brignoni–Ponce,* 422 U.S. 873, 884, 45 L. Ed. 2d 607, 95 S. Ct. 2574 (1975).

In the case before us, Officer Sorger, a patrolman with 8 years of service, had the following objective facts and reasonable inferences to consider when he approached defendant:

1. A burglary had occurred at a shopping center.

2. A car had been left in the shopping center parking lot with its door open.

3. The car contained items seized as burglary tools and torn pages from different telephone directories advertising pharmacies in Lacey and Tacoma.

4. The suspect car was registered to a person with an address in Tacoma, approximately 25 miles to the north.

5. The shopping center was less than a mile from a north–south freeway which leads to Tacoma.

6. It was very early in the morning.

7. Few cars and no other pedestrians were in the vicinity, and the officer had not observed any other pedestrians in his trip from the scene of the crime to the ramp.

8. Defendant was on foot beside the northbound on–ramp to the freeway; and

9. Defendant carried no backpack or luggage such as a traveling hitchhiker might be carrying.

From these facts, the officer could reasonably infer the following: (a) There was a connection between the car and the burglary; (b) the suspect driver would be on foot; (c) the suspect might try to escape to the north. Reviewing these facts and inferences, we find that Officer Sorger had a reasonable and articulable suspicion that defendant had been associated with the burglary. Accordingly, we hold that Officer Sorger lawfully approached and briefly detained defendant as part of his police responsibility to conduct an investigatory detention because he had a well founded and articulable suspicion that the person approached had been associated with a crime. *See State v. Sieler*, 95 Wn.2d 43, 621 P.2d 1272 (1980).

While the officer had the right to make the inquiry, we do not believe these circumstances would have justified more than this minimal intrusion. Until Mr. Young answered the identification questions, revealed his address, and the officer learned it matched the address to which the suspect car was registered, Sorger did not have probable cause to believe defendant had committed the burglary. *See State v. Scott*, 93 Wn.2d 7, 604 P.2d 943 (1980). Although Mr. Young may not have felt he could refuse to answer, the officer clearly could not have compelled him to do so. *Davis v. Mississippi, supra* at 727 n.6; fifth amendment to the United States Constitution; *see Brown v. Texas*, 443 U.S. 47, 61 L. Ed. 2d 357, 99 S. Ct. 2637 (1979) (invalidating

Texas statute making it a crime to refuse to identify self on policeman's request); *see also People v. Howard,* 50 N.Y.2d 583, 590–91, 408 N.E.2d 908, 913, 430 N.Y.S.2d 578, *cert. denied,* 449 U.S. 1023, 66 L. Ed. 2d 484, 101 S. Ct. 590 (1980). Mr. Young, however, chose to answer the question and his answer, of course, proved incriminating. It provided the additional information the officer needed for probable cause to believe defendant had committed the burglary. The officer's subsequent arrest of defendant was therefore lawful, and the evidence of the paint chips on the clothing seized incident to that arrest was properly admissible at trial. *See United States v. Edwards,* 415 U.S. 800, 801–03, 39 L. Ed. 2d 771, 94 S. Ct. 1234 (1974) (clothing containing incriminatory paint chips not seized until hours after arrest; seizure held lawful as incident to arrest).

Judgment affirmed.

REED, C.J., and PEARSON, J., concur.

Reconsideration denied April 3, 1981.

Review denied by Supreme Court June 12, 1981.