[Nos. 4665–II; 4773–II. Division Two. October 7, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v. MARTIN C. SELVIDGE, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. ERIC GREER, *Appellant.*

Michael A. Dunn and Denend & Dunn, for appellant Selvidge.

Ronald D. Ness and Matosich & Ness, for appellant Greer.

C. Danny Clem, Prosecuting Attorney, and Kenneth G. Bell, Deputy, for respondent.

PETRICH, J.—Martin Selvidge and Eric Greer appeal the denial of their motions to suppress evidence and their subsequent convictions of second degree burglary. Their appeal raises two issues: whether a police officer had a sufficient basis for undertaking a brief investigative inquiry into defendants' activities; and whether the officer's subsequent observation of the soles of defendants' shoes constituted a search subject to Fourth Amendment protections. We hold that the officer's conduct in initiating his inquiry was reasonable under the circumstances and that, because defendants had no reasonable expectation of privacy in the soles of their shoes, the officer's observation was not a search under the Fourth Amendment. We therefore affirm both convictions.

At 5:30 a.m. on December 13, 1979, Officer Terry Zuber, a patrolman for the Port Orchard Police Department, responded to a report of a break–in at a Port Orchard junior high school. As he explored the interior of the school, he saw that someone had sprayed fire extinguishers through the wood and metal shops. In the powdery residue left by the spray, the officer saw two clear sets of footprints. From

these prints, the officer determined that the shoes which had made the prints had distinctive tread and wear patterns. After another officer arrived to take over the investigation, Officer Zuber resumed his regular patrol.

At 7 a.m. Officer Zuber saw defendants' green 1968 Mustang parked in an isolated area three blocks from the school. At 2 a.m. a deputy sheriff had reported the same car "prowling" around the town. The officer himself had seen the car "prowling" and recognized the defendants in it at 4 a.m. Approaching the car, Officer Zuber asked defendants for identification and an explanation of their presence. The officer knew the passenger, defendant Martin Selvidge, from his previous involvements with the police.

In response to the officer's question about their activities, defendants said they were waiting to pick up a girl who lived nearby. There were no houses in the immediate vicinity. The officer then asked to see defendants' shoes. Sitting in the front passenger seat, Selvidge lifted his right foot and turned it over so that the sole faced the officer. The officer leaned into the car to get a closer look. It had, he noticed, a wavy pattern with distinctive wear characteristics. He also noticed spots of bright blue ink spilled on Selvidge's pants. In the driver's seat, Greer took off one shoe and showed it to the officer. Greer's shoe had the word "Dexter" repeated in a unique pattern as part of the tread design. After looking at the shoes, Officer Zuber left defendants and returned to his patrol.

Subsequently, he returned to the vandalized school. With the investigating officer, he reexamined the footprints in the fire extinguisher residue. He noted that the tread and wear patterns of the prints in the residue were similar to those on defendants' shoes. From the investigating officer, Officer Zuber learned that a school cash register had been broken into and a quantity of bright blue ink had been spilled. The ink was the same color as that he had noticed on Selvidge's pants. Officer Zuber then searched out defendants and arrested them. Later, direct comparison of the shoes with the footprints showed a close match.

Claiming violation of their Fourth Amendment rights, defendants moved to suppress the evidence obtained as a result of the officer's observation of the shoes. After a hearing held pursuant to CrR 3.6, the court denied the motion. Both defendants submitted their cases to the court for trial on stipulated facts. They appeal their convictions and sentences for second degree burglary.

■ Defendants first claim that Officer Zuber was not entitled to approach defendants and inquire about their activities. We disagree. When police officers have a "well-founded suspicion not amounting to probable cause" to arrest, they may nonetheless stop a suspected person, identify themselves and ask that person for identification and an explanation of his or her activities. *State v. Gluck,* 83 Wn.2d 424, 426, 518 P.2d 703 (1974). *Brown v. Texas,* 443 U.S. 47, 61 L. Ed. 2d 357, 99 S. Ct. 2637 (1979). The United States Supreme Court has said there is no "ready test" against which to measure particular "seizures" short of a custodial arrest.[1] *Terry v. Ohio,* 392 U.S. 1, 19, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). In situations such as that confronting Officer Zuber, however, the court has applied the Fourth Amendment by requiring a police officer to justify his conduct. To do so the officer must be able to point to "specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion . . ." that the individual is or has recently been involved in criminal activity. *Delaware v. Prouse,* 440 U.S. 648, 656, 59 L. Ed. 2d 660, 99 S. Ct. 1391 (1979), quoting *United States v. Brignoni–Ponce,* 422 U.S. 873, 884, 45 L. Ed. 2d 607, 95 S. Ct. 2574 (1975).

The assessment of the whole picture must produce a

---

[1]Nor has the court yet provided a definitive holding on the question of whether persons approached by police and asked to identify themselves and briefly explain their activities are "seized" for Fourth Amendment purposes. *State v. Young,* 28 Wn. App. 412, 420, 624 P.2d 725 (1981). *See Reid v. Georgia,* 448 U.S. 438, 65 L. Ed. 2d 890, 100 S. Ct. 2752 (1980). For the purposes of this analysis we assume, as we did in *Young, supra,* that defendants were "seized" and apply Fourth Amendment standards to this investigative inquiry.

particularized suspicion of wrongdoing before a "seizure" short of arrest may be permitted. In reviewing such matters we recognize that the training and experience of a law enforcement officer may add to the observed facts a meaning that may escape the untrained observer. Such facts may be combined with permissible deductions to form a legitimate basis for suspicion of a particular person justifying a stop and inquiry short of arrest. *United States v. Cortez,* 449 U.S. 411, 66 L. Ed. 2d 621, 101 S. Ct. 690 (1981).

When he approached defendants in their parked car, Officer Zuber considered the following facts: the car was parked in an isolated location at an unusual hour; a burglary had just occurred three blocks away; a number of other burglaries had recently occurred in the same neighborhood; defendants had been observed twice in the earlier hours of that morning "prowling" around the town; one of the occupants of the car was already under investigation for a recent burglary at the same school and had previously been involved in other burglaries.[2] From these facts and reasonable inferences which he could draw from them, we find Officer Zuber was reasonably warranted in having a suspicion that defendants had been engaged in criminal activity. Accordingly, we hold that he lawfully approached defendants' car to conduct an investigatory inquiry.

Defendants argue, however, that even if the officer's initial investigatory inquiry was reasonable, his observation of the soles of their shoes improperly expanded the investigation into a search which violated the Fourth Amendment. They claim the observation was the sort of official intrusion into a person's privacy which can be justified only on a showing of probable cause, an element they argue was

---

[2]Defendant Selvidge kept most of the details of his criminal history out of the record on grounds the State was improperly attempting to impeach him. The Officer's knowledge of Selvidge's record would have been admissible on the question of probable cause at the suppression hearing, even though inadmissible at trial except for impeachment purposes. *See Brinegar v. United States,* 338 U.S. 160, 172–73, 93 L. Ed. 1879, 69 S. Ct. 1302 (1949) (different standard for evidence providing probable cause and evidence admissible to prove guilt).

absent here.

■ Reviewing defendants' arguments, we first consider whether the officer's conduct in fact constituted a search entitled to Fourth Amendment protection.[3] The dispositive determination in our analysis is whether these defendants can claim a "justifiable," "reasonable," or "legitimate" expectation of privacy in the tread pattern on the soles of shoes they are wearing. *Smith v. Maryland,* 442 U.S. 735, 740, 61 L. Ed. 2d 220, 99 S. Ct. 2577 (1979). Absent such an expectation, any intrusion by the officer would not constitute a search subject to the Fourth Amendment. *Smith v. Maryland,* 442 U.S. at 745–46; *State v. Christian,* 95 Wn.2d 655, 659, 628 P.2d 806 (1981). In *Smith,* the Supreme Court indicated this determination involves two separate inquiries:

1. Has the individual, by his actions, shown that he actually (subjectively) has an expectation of privacy in the place searched or things seized; and
2. Is society prepared to recognize this subjective expectation of privacy as legitimate?

*State v. Young,* 28 Wn. App. 412, 416, 624 P.2d 725 (1981), citing *Smith v. Maryland,* 442 U.S. at 740.

■ It is clear that physical characteristics which a person knowingly exposes to the public are not subjects of Fourth Amendment protection. *United States v. Mara,* 410 U.S. 19, 21, 35 L. Ed. 2d 99, 93 S. Ct. 774 (1973); *Katz v. United States,* 389 U.S. 347, 351, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967). We do not believe that merely by sitting in an automobile defendants can be held to have shown they had a subjective expectation of privacy in their shoe patterns, patterns shown to the world with every footstep. *See Smith v. Maryland, supra.*

Our conclusion accords with that reached by the only

---

[3]The trial court did not rule directly on whether the officer's observation of the shoes was a search. The court said that even if it was a search, it was reasonable under an analysis which balanced the defendants' Fourth Amendment rights against the public's interest in effective law enforcement. *See Camara v. Municipal Court,* 387 U.S. 523, 534–35, 18 L. Ed. 2d 930, 87 S. Ct. 1727 (1967).

other court which appears to have considered a direct Fourth Amendment challenge to an officer's observation of a suspect's shoes in similar circumstances. *See State v. Coleman,* 122 Ariz. 130, 593 P.2d 684 (Ct. App. 1978), *aff'd in part, modified in part on other grounds,* 122 Ariz. 99, 593 P.2d 653 (1979). In *Coleman,* police discovered footprints at the scene of a crime. Just as in the case before us, tread design and wear patterns gave the footprints distinctive characteristics. A tracking dog led police to a nearby housing project. At the project, police saw a man sitting barefoot and inquired where his shoes were. He pointed them out, an officer examined the tread, and found a match. The Arizona court rejected Coleman's contention that the examination of his shoes was an unreasonable search and seizure and found the Supreme Court's holding in *United States v. Dionisio,* 410 U.S. 1, 35 L. Ed. 2d 67, 93 S. Ct. 764 (1973)[4] apposite:

> Examining the physical characteristics of the soles of appellant's shoes is like taking a voice exemplar. The police sought to compare the shoes with footprints just as the grand jury in *Dionisio* sought to compare the voice exemplar with recordings. Examination of such physical characteristics "involves none of the probing into an individual's private life and thoughts that marks an interrogation or search".

(Citation omitted.) *State v. Coleman,* 122 Ariz. at 133, 593 P.2d at 687. *See also Brockington v. State,* 152 Ga. App. 11, 262 S.E.2d 170 (1979), *cert. dismissed,* 445 U.S. 974, 64 L. Ed. 2d 253, 100 S. Ct. 1672 (1980) (dictum) (person has no reasonable expectation of privacy in observation of type of shoes worn).

We hold, therefore, that Officer Zuber's observation of the soles of defendants' shoes did not constitute a search entitling defendants to invoke the protections of the Fourth Amendment.

---

[4]Held: No search involved in grand jury subpoena requiring voice exemplar because person has no reasonable expectation of privacy in physical characteristics of voice.

Accordingly, the judgment is affirmed.

REED, C.J., and PEARSON, J., concur.

Reconsideration denied November 16, 1981.

Review denied by Supreme Court February 5, 1982.