[No. 10898–1–I.  Division One.  December 27, 1982.]

THE STATE OF WASHINGTON, *Respondent*, v. WALTER O'NEIL SWAITE, *Appellant*.

*Raymond H. Thoenig* of *Washington Appellate Defender Association,* for appellant.

*Russ Juckett, Prosecuting Attorney,* and *Asa Glazer, Deputy,* for respondent.

ANDERSEN, C.J.—

## FACTS OF CASE

The defendant, Walter Swaite, appeals the judgment and sentence entered following a jury verdict finding him guilty of burglary in the second degree and theft in the first degree.

On May 15, 1981, a City of Edmonds police officer (first officer) arrived on the scene of a reported residential burglary. The homeowner advised the officer that when he returned to his residence, after an absence of approximately 15 minutes, he discovered a broken window in the door of his home but did not think that anything was missing from inside. The homeowner further related that when he initially left his home he observed an individual, whom he had never seen before, walking nearby. The homeowner then furnished the first officer with a detailed description of that individual.

Shortly thereafter, another officer (second officer) who was patrolling the area in a police car, observed the defendant who matched the homeowner's description. The

defendant, apparently upon seeing the second officer, hopped over a fence into some bushes and disappeared from view. The first officer then drove to the area, located the defendant and required him to stop.

After removing a "buck" knife from the defendant's belt, the first officer conducted a pat–down search for additional weapons. In the course of that search, the officer felt two hard cylindrical objects, about 3 to 4 inches in length, in the defendant's rear pocket. The officer removed the objects and discovered that they were two carved ivory cigarette holders. The first officer then advised the defendant of his constitutional rights.

While the first officer detained the defendant, the second officer returned to the scene of the reported burglary with the two cigarette holders. The homeowner, however, stated that the holders did not belong to him.

Before the second officer returned, the first officer questioned the defendant about his identity and presence in the area. The defendant gave the officer a name, said his car had run out of gas and admitted that he had been previously arrested in Seattle for assault. The defendant also said that he had purchased the cigarette holders from "Pier 70 Imports" on the Seattle waterfront. The first officer then attempted to confirm some of this information through police channels. Before the record check was completed, however, the second officer returned with the cigarette holders and related the fact of the homeowner's negative identification. In addition, another officer located the defendant's car and discovered, contrary to defendant's explanation, that the car had half a tank of gas and was operable.

Subsequently, the record check was completed and it showed that the defendant had given the officers a false name. The first officer, retaining possession of the cigarette holders, placed the defendant under arrest for "obstructing" and transported him to the police station. At the station the defendant's wallet was examined, his true identity was established and an outstanding traffic warrant and

misdemeanor warrant were discovered.

The cigarette holders were later identified as having been stolen from another residence in the same neighborhood which had been burglarized that same day. Further, a search of the bushes around the fence which the defendant had jumped across uncovered a jewelry box which was later identified as having also been stolen from the same residence from which the cigarette holders had been taken.

Prior to trial, the defendant moved to suppress the evidence as having resulted from an unlawful arrest. The trial court found that defendant's arrest for "obstructing" was lawful and denied the motion.

At the defendant's jury trial, the cigarette holders, various statements of the defendant and other information obtained subsequent to his arrest were admitted into evidence along with the jewelry box. Further, a police sergeant testified that the soles of the defendant's boots were similar to a partial footprint found outside the burglarized residence. The jury returned a verdict finding the defendant guilty of second degree burglary and first degree theft.

The defendant's appeal presents one ultimate issue.

## ISSUE

Did the trial court err in denying the defendant's motion to suppress the fruits of his arrest and dismiss the State's case against him?

## DECISION

CONCLUSION. The investigatory stop of the defendant was lawful as it was premised on a reasonable suspicion, based on articulable facts, that the defendant had been involved in criminal activity. The arrest of the defendant for obstructing, however, was invalid since it was based on a statute which the State Supreme Court subsequent to the trial of this case held to be unconstitutionally vague. No other justification for the defendant's arrest having been shown, it must now be held that the trial court erred to the extent that it did not suppress the evidence which resulted from that unlawful arrest. Since the tainted evidence may

be excised out, however, leaving evidence which if believed by the trier of the fact would be legally sufficient, the case will not be dismissed but will be remanded for a new trial.

■ A police officer having a reasonable suspicion based on articulable facts that an individual has committed or is committing a crime may make a brief investigatory stop of that person and ask him for identification and an explanation of his activities even though probable cause for an arrest is lacking. *State v. Thompson,* 93 Wn.2d 838, 840–41, 613 P.2d 525 (1980); *State v. Selvidge,* 30 Wn. App. 406, 409, 635 P.2d 736 (1981). Once detained, the officer may properly conduct a self–protective pat–down search if he has a reasonable belief that the suspect is presently armed and dangerous. *State v. Hobart,* 94 Wn.2d 437, 446, 617 P.2d 429 (1980); *State v. Wakeley,* 29 Wn. App. 238, 243, 628 P.2d 835 (1981). The fact that the suspect is not free to leave does not, in and of itself, transform a valid investigatory detention into a traditional arrest with its requirement of probable cause. *State v. Wakeley, supra* at 240.

In the present case, the first officer was aware that a serious offense, burglary or attempted burglary, had just occurred in a neighborhood which was then experiencing a rash of residential burglaries. The homeowner gave the officer a detailed description of a suspicious individual whom he had seen just prior to the commission of the crime and the defendant matched that description. Further, in apparent response to seeing the second officer, the defendant fled by jumping a fence into some bushes in an attempt to evade the police. Under these facts and circumstances, the first officer acted reasonably in stopping the defendant and asking him to identify himself and explain his presence in the area. *See State v. Selvidge, supra* at 410; *State v. Wakeley, supra* at 242.

Once detained, it was not unreasonable for the police to conduct a pat–down search of the defendant. In light of the serious nature of the crime under investigation and the presence of the "buck" knife on the defendant's belt and in plain view, the officer was justified in a belief that other

weapons might be concealed on the defendant's person. It was permissible for the officer to take the cigarette holders from defendant's rear pocket and examine them, since their shape and hardness give rise to a reasonable belief the objects were potential weapons. *See State v. Hobart, supra* at 446; *State v. Wakeley, supra.*

Nor was it improper for the first officer to briefly detain the defendant while the second officer returned to the scene with the cigarette holders for identification.

> Prompt efforts at identification by a victim or witness and determination of the culpability or innocence of the person detained are appropriate factors in considering the reasonableness of the investigative technique. LaFave states:
>> If the matter is susceptible to quick resolution in this manner, then certainly resort to such procedures is to be preferred over other techniques which are likely to be less conclusive and to require more extended detention.

*State v. Gardner,* 28 Wn. App. 721, 727, 626 P.2d 56 (1981), quoting 3 W. LaFave, *Search and Seizure* § 9.2, at 43 (1978).

Once the second officer returned with the information that the cigarette holders were not stolen from the homeowner, it would appear that the principal purpose of the investigatory detention had ended and that the officers did not, at that time, have probable cause to arrest the defendant for burglary.[1] The State argues, however, that the police retention of the cigarette holders was nonetheless lawful because the defendant was properly arrested for "obstructing" pursuant to RCW 9A.76.020(2) which prohibits the making of any "knowingly untrue statement to a

---

[1]Although the officers did not at that time have probable cause to arrest the defendant for burglary, it was not unreasonable as part of the ongoing investigation to briefly detain the defendant until the record check was completed. "[A] brief detention of a suspect during the investigatory stage, pending a police headquarters radio check in the course of that investigation, does not violate the Fourth Amendment if the officer has reasonable cause to believe from the information obtained from the suspect that such a check is necessary." *State v. Sinclair,* 11 Wn. App. 523, 529–30, 523 P.2d 1209 (1974).

public servant"[2]

Subsequent to the trial of this case, the State Supreme Court in *State v. White,* 97 Wn.2d 92, 640 P.2d 1061 (1982), held that "RCW 9A.76.020 is invalid as to sections 1 and 2" on the grounds of vagueness. *State v. White, supra* at 101. In that decision, the Supreme Court further held that evidence obtained as a direct result of an arrest under *either* section 1 or 2 of the obstructing statute must be suppressed as fruit of the poisonous tree. *State v. White, supra* at 104.

■ On the basis of the State Supreme Court's decision, therefore, we must conclude that the defendant's arrest for "obstructing" in this case, by his giving false information to the police officers, was unlawful. *State v. White, supra.* No other lawful ground for which the defendant could have been arrested at that time having been shown, the trial court erred by not suppressing the cigarette holders and the other evidence which was obtained as the direct result of the unlawful arrest.[3] *State v. Melrose,* 2 Wn. App. 824, 828, 470 P.2d 552 (1970); *State v. Kennedy,* 8 Wn. App. 633, 636, 508 P.2d 1386 (1973). *See Wong Sun v. United States,* 371 U.S. 471, 484–85, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963). Specifically, that evidence which was obtained incident to or as a direct result of the unlawful police conduct and which must now be suppressed includes: the physical evidence of the two cigarette holders, *i.e.,* the two cigarette holders themselves; the evidence obtained through the search of the defendant's wallet; the statements made by

---

[2]RCW 9A.76.020, in pertinent part, provides:

"Obstructing a public servant. Every person who, (1) without lawful excuse shall refuse or knowingly fail to make or furnish any statement, report, or information lawfully required of him by a public servant, or (2) in any such statement or report shall make any knowingly untrue statement to a public servant, . . ."

[3]It should be noted, however, that our holding suppressing the fruits of the unlawful arrest pertains only to this criminal action and in no way, of course, inhibits the rights of the true owner in recovering any of the property which was stolen. RCW 10.79.050. *See Stohr v. Randle,* 81 Wn.2d 881, 885, 505 P.2d 1281 (1973).

the defendant in response to police inquiries subsequent to his being placed under arrest; and the victim's testimony that the two cigarette holders observed in police custody by the witness had been stolen from her home.[4]

The unlawful arrest, however, is not a bar to the defendant being tried again. *United States v. Crews,* 445 U.S. 463, 474, 63 L. Ed. 2d 537, 100 S. Ct. 1244 (1980); *Pasco v. Titus,* 26 Wn. App. 412, 416, 613 P.2d 181 (1980). At a new trial, the State would be allowed to endeavor to prove the defendant's guilt with evidence untainted by what has now been determined to be government illegality. *United States v. Crews,* 445 U.S. at 474; *State v. Peyton,* 29 Wn. App. 701, 706, 630 P.2d 1362 (1981).

In this regard, we observe that while "[t]he exclusionary rule enjoins the Government from benefiting from evidence it has unlawfully obtained; it does not reach backward to taint information that was in official hands prior to any illegality." *United States v. Crews,* 445 U.S. at 475. Thus, all information obtained by the police prior to and during the lawful investigative detention of the defendant would not be subject to suppression on Fourth Amendment grounds. This evidence includes: the facts related to the first officer by the complainant and the officer's observations at the complainant's residence; the second officer's observation of the defendant's apparent evasive actions in jumping the fence and disappearing from view; the defendant's explanation that his car was out of gas and the subsequent police discovery that the car had half a tank of gas and was operational; the pat–down search of the defendant including a description of the cigarette holders that the officers observed in his possession; the defendant's explanation in response to valid investigative questioning that he had purchased the holders from "Pier 70 Imports"; and any

---

[4]The victim's identification must be suppressed because such identification was established through the direct use of the actual cigarette holders by the police after they had been seized and retained pursuant to the unlawful arrest. *People v. Dowdy,* 50 Cal. App. 3d 180, 123 Cal. Rptr. 155, 158 (1978).

other pertinent information related to the officers by the defendant prior to his being placed under arrest for "obstructing".

Similarly, all evidence obtained independent of the arrest may be proved in the same fashion as any other evidence. *Pasco v. Titus, supra* at 416; *State v. Kennedy, supra* at 636. This evidence includes: the victim's report to the police respecting the burglary of her home and a description of the items which had been stolen; the discovery of the jewelry box near where the defendant jumped the fence just prior to his being detained;[5] the victim's identification of the jewelry box and its contents as having been stolen from her home; the evidence respecting the footprint with its distinctive tread pattern found outside the victim's window;[6] and the testimony from "Pier 70 Imports" employees that cigarette holders such as the ones taken from the victim and observed by the officers in this case have not been available at "Pier 70 Imports" stores.

The foregoing evidence could be deemed by the trier of the fact to be sufficient to convict the defendant, and if so, would suffice to satisfy this state's legal sufficiency of the evidence test. *See State v. Green,* 94 Wn.2d 216, 616 P.2d 628 (1980); *State v. Gerber,* 28 Wn. App. 214, 622 P.2d 888 (1981). *See also State v. Palmer,* 1 Wn. App. 152, 459 P.2d 812 (1969); *State v. Newman,* 68 Wn.2d 236, 412 P.2d 515 (1966). It is, therefore, unnecessary to further discuss the defendant's contentions relating to the claimed insuffi-

---

[5]The jewelry box also constituted abandoned property. Thus, the defendant has no standing to object to its admissibility on Fourth Amendment grounds. *State v. Tidwell,* 23 Wn. App. 506, 508, 597 P.2d 434 (1979); *State v. Serrano,* 14 Wn. App. 462, 470, 544 P.2d 101 (1975).

[6]Physical characteristics which a person knowingly exposes to the public are not subjects of Fourth Amendment protection and, specifically, a person has no reasonable expectation of privacy in the tread pattern of the soles of the shoes that he or she wears in public. *State v. Selvidge,* 30 Wn. App. 406, 411–12, 635 P.2d 525 (1980); *State v. Coleman,* 122 Ariz. 130, 593 P.2d 684, 686–87 (Ct. App. 1978), *aff'd in part, modified in part on other grounds,* 122 Ariz. 99, 593 P.2d 653 (1979).

ciency of the State's evidence.

Reversed and remanded for a new trial.

WILLIAMS and CORBETT, JJ., concur.

Reconsideration denied March 16, 1983.