[No. 8625-9-III. Division Three. June 23, 1988.]

THE CITY OF SUNNYSIDE, *Respondent,* v. VICTOR L.
WENDT, *Petitioner.*

*Victor L. Wendt,* pro se.

*Daniel B. Heid, City Attorney,* for respondent.

McINTURFF, C.J.—Mr. Wendt was convicted in district court of negligent driving and obstructing a law enforcement officer. We affirm the conviction of obstructing a law enforcement officer and reverse the negligent driving conviction.

On June 23, 1985, Victor Wendt drove his station wagon to the Brand X store in Sunnyside, parked it, and went into the store. The station wagon then rolled into a Camaro, damaging the driver's door. The driver of the Camaro indicated the station wagon brushed her leg before hitting the Camaro, however, she did not require medical attention. Mr. Wendt gave the driver of the Camaro a piece of paper with his name and phone number so she could contact him about the accident. The other driver showed the paper to the investigating officer when he arrived.

Mr. Wendt told the investigating officer he owned the station wagon. The officer began to check to see if the brakes worked when Mr. Wendt told him they were on private property and he had no right to investigate the accident. The officer reported the brakes had very little resistance. He asked Mr. Wendt to produce his driver's license; Mr. Wendt said he had no driver's license. He then asked Mr. Wendt for identification; he refused to produce identification. The officer told Mr. Wendt he intended to make out a report and everyone could be on their way. Mr. Wendt still refused to identify himself and the officer arrested him. At the police station a wallet was found in Mr. Wendt's hard hat which contained his driver's license.

Mr. Wendt was convicted of negligent driving and obstructing a law enforcement officer after a trial where he did not testify. On appeal, the Superior Court affirmed the convictions. We granted discretionary review.

The first issue is whether the Superior Court improperly heard Mr. Wendt's appeal because the judge was prejudiced against him.

As part of the Superior Court's oral decision on appeal, the court commented on the fairness of the trial and difficulty of the situation involving Mr. Wendt's trial and appeal. In essence the court indicated Mr. Wendt found himself in this situation because he refused to cooperate. For example, he refused to accept notice of the date the court would rule on his appeal, sent by certified mail, causing the court to use other means to notify him. However, Mr. Wendt did not file an affidavit of prejudice against the superior court judge.[1] Nor did he object to the judge hearing his appeal.

A defendant proceeding pro se must comply with all applicable procedural rules. *State v. Smith*, 104 Wn.2d 497, 508, 707 P.2d 1306 (1985). RALJ 11.7(d) provides JCrR 8.01,[2] concerning judge disqualification, should apply to *appellate* proceedings in criminal cases from the court of limited jurisdiction "when not in conflict with the purpose or intent of these rules and when application is practicable". JCrR 8.01(a) provides in any case pending in any court of limited jurisdiction, unless otherwise provided by law, disqualification of a judge to hear and try a case shall occur when he is any way interested or prejudiced. Since the superior court was the appellate court in this instance, JCrR 8.01 is applicable.

The record does not reveal any actual prejudice which would have disqualified the judge. As to this issue, we conclude there was no reversible error.

The second issue is whether negligent driving can be committed on private property when the defendant has exited his vehicle before it rolled into another vehicle.

The City of Sunnyside has adopted an ordinance analogous to RCW 46.61.525. RCW 46.61.525 provides, in part:

---

[1]Mr. Wendt filed an affidavit of prejudice against the superior court judge originally assigned to hear the case, but not against the judge who actually heard the case.

[2]JCrR 8.01 has been rescinded and replaced by CrRLJ 8.9. 108 Wn.2d 1149, 1228 (1987).

> It shall be unlawful for any person to *operate a motor vehicle in a negligent manner.* For the purpose of this section to "operate in a negligent manner" shall be construed to mean the operation of a vehicle in such a manner as to endanger or be likely to endanger any persons or property: *Provided however,* That any person operating a motor vehicle on private property with the consent of the owner in a manner consistent with the owner's consent shall not be guilty of negligent driving.

(Italics ours.) Operator is defined in RCW 46.04.370 as "every person who drives or is in actual physical control of a vehicle." RCW 46.61.525 prohibits driving in a manner which is both negligent and dangerous. *Spokane v. Vaux,* 83 Wn.2d 126, 130, 516 P.2d 209 (1973). Whether "operating a motor vehicle" can occur when the car is parked, not running, and *unoccupied* has not been decided in Washington.

Conviction of negligent homicide by a motor vehicle requires proof of operation of a vehicle. RCW 46.61.520; *In re Arambul,* 37 Wn. App. 805, 807, 683 P.2d 1123, *review denied,* 102 Wn.2d 1022 (1984). A passenger seated next to the driver who momentarily grabs the steering wheel of the car causing it to swerve over the center line and collide with another vehicle is in *actual physical control. Arambul,* at 808.

*State v. Smelter,* 36 Wn. App. 439, 674 P.2d 690 (1984) held a person can be found guilty of being in actual physical control of a motor vehicle while under the influence of intoxicating liquor when he is found behind the wheel of an auto which was stopped, with its engine off, on the shoulder of a highway and the car is out of gas. "To operate" includes a larger class of activities than "to drive"; one who drives operates a vehicle, but the reverse is not necessarily so. *Smelter,* at 441. Before *Smelter,* "actual physical control" had not been defined by Washington law.

*Smelter,* at 445–46, held for purposes of RCW 46.61.504, a person is in "actual physical control" of a vehicle where the defendant is in a position to regulate the

vehicle's movements *or* has authority to manage the vehicle. It does not matter if the vehicle is incapable of moving. *Smelter* discussed cases from other jurisdictions which have found a defendant in actual physical control of a motionless vehicle. These cases commonly involved factual situations where a defendant was positioned in the driver's seat and in active or constructive possession of an ignition key to a vehicle that was operable to some extent. *Smelter,* at 442–43. We believe such a factual situation is required for a conviction of negligent driving, RCW 46.61.525. Mr. Wendt's stopping of his vehicle, exiting the vehicle, and entry into a store does not fall within the ambit of being in "actual physical control" of a vehicle.[3]

Mr. Wendt argues the most he could have been charged with was RCW 46.61.600, the unattended motor vehicle statute.[4] Since Mr. Wendt was not charged with this offense, and the City concedes he could not have been so

---

[3]The City cites numerous cases from other jurisdictions. These cases do not involve criminal convictions and generally deal with civil negligence. *Horst v. Holtzen,* 249 Iowa 958, 90 N.W.2d 41 (1958), which the City argues is most relevant to this case, found a person was an operator although the person was outside the automobile, helping a passenger into the vehicle. However, that case is distinguishable because it did not involve criminal liability and the car was left running.

[4]RCW 46.61.600 provides:

"Unattended motor vehicle. (1) No person driving or in charge of a motor vehicle shall permit it to stand unattended without first stopping the engine, locking the ignition, removing the key and effectively setting the brake thereon and, when standing upon any perceptible grade, turning the front wheels to the curb or side of the highway.

"(2) The most recent driver of a motor vehicle which the driver has left standing unattended, who learns that the vehicle has become set in motion and has struck another vehicle or property, or has caused injury to any person, shall comply with the requirements of:

"(a) RCW 46.52.010 if his vehicle strikes an unattended vehicle or property adjacent to a public highway; or

"(b) RCW 46.52.020 if his vehicle causes damage to an attended vehicle or other property or injury to any person.

"(3) Any person failing to comply with subsection (2)(b) of this section shall be subject to the sanctions set forth in RCW 46.52.020."

charged since the accident occurred on private property,[5] the court need not address this issue.

In summary, we hold that when a driver has turned off the ignition in a car, exited and left to conduct personal business, he is not an operator of the vehicle, an element of negligent driving, and thus, cannot be convicted of that offense.

The third issue is whether Mr. Wendt's arrest for obstructing a law enforcement officer by refusing to identify himself was lawful.

Mr. Wendt was charged and convicted of violating Sunnyside Municipal Code 9.56.020, entitled Obstructing a Law Enforcement Officer.[6] It reads as follows:

> It is unlawful for any person to make any willfully untrue, misleading or exaggerated statement to a law enforcement officer, or to willfully hinder, delay or obstruct any law enforcement officer in the discharge of his official powers or duties.

The essential elements of the analogous state statute, RCW 9A.76.020(3), are (1) that the action or inaction in fact hinders, delays, or obstructs; (2) that the hindrance, delay or obstruction be of a public servant in the midst of discharging his official powers or duties; (3) knowledge by the defendant that the public servant is discharging his

---

[5] RCW 46.61.005 provides:
Provisions of chapter refer to vehicles upon the highways—Exceptions. The provisions of this chapter relating to the operation of vehicles refer exclusively to the operation of vehicles upon highways *except*:
(1) Where a different place is specifically referred to in a given section.
(2) *The provisions of RCW 46.52.010 through 46.52.090 and 46.61.500 through 46.61.520 shall apply upon highways and elsewhere throughout the state.*
(Italics ours.) RCW 46.61.600 is not specifically mentioned in RCW 46.61.005. Nor does RCW 46.61.600 specifically state it applies to actions on private property.

[6] The charge was originally described as "Obstructing a Public Servant", although the municipal code section, 9.56.020, was correctly listed. The description was amended to read "Obstructing a Law Enforcement Officer".

duties; and (4) that the action or inaction be done knowingly by the obstructor, *i.e.*, with intent to hinder. *State v. CLR*, 40 Wn. App. 839, 841–42, 700 P.2d 1195 (1985).

Mr. Wendt's actions met elements 1 and 3: he delayed the preparation of the officer's report, after the officer told him he needed to prepare the report. Mr. Wendt's action of falsely stating he had no driver's license was done knowingly with intent to hinder the officer, given Mr. Wendt's belief the officer had no authority to investigate accidents on private property. Thus, element 4 is also met.

The only question is whether element 2 was met. The officer claimed the information Mr. Wendt gave the other driver was insufficient to prepare the report he was required to make. RCW 46.52.030[7] and .070,[8] adopted by the City, authorize and require police officers to make investigations of accidents. These provisions apply even though the accident is on private property.[9]

The driver of the Camaro testified her leg was bruised by Mr. Wendt's car; therefore, regardless of the dollar value of the damage to her car, Mr. Wendt had a duty to make a

---

[7]Former RCW 46.52.030 (Laws of 1981, ch. 30, § 1, p. 123) provided, in part:

"Accident reports. (1) The driver of any vehicle involved in an accident resulting in injury to or death of any person or damage to the property of any one person to an apparent extent of three hundred dollars or more, shall, within twenty-four hours after such accident, make a written report of such accident to the chief of police of the city or town if such accident occurred within an incorporated city or town or the county sheriff or state patrol if such accident occurred outside incorporated cities and towns.

". . .

"(4) Any law enforcement officer who investigates an accident for which a driver's report is required under subsection (1) of this section shall submit an investigator's report as required by RCW 46.52.070."

[8]RCW 46.52.070 provides:

"Police officer's report. Any police officer of the state of Washington or of any county, city, town or other political subdivision, present at the scene of any accident or in possession of any facts concerning any accident whether by way of official investigation or otherwise shall make report thereof in the same manner as required of the parties to such accident and as fully as the facts in his possession concerning such accident will permit."

[9]See RCW 46.61.005(2); footnote 5.

written report of the accident and a law enforcement officer is required to submit an investigator's report. RCW 46.52-.030(1), (4). The investigating officer claims the information he possessed was not sufficient to prepare the report and that the identification in the form of a driver's license was necessary. Although the statute does not specify that examination of a driver's license is necessary to file the report, the law enforcement officer was discharging his official duty to file a report and the information requested from Mr. Wendt would be appropriate information to include in the report.

Is the ordinance constitutional? We start with the premise that a statute is presumed constitutional. *State v. Dixon,* 78 Wn.2d 796, 804, 479 P.2d 931 (1971). *State v. White,* 97 Wn.2d 92, 106, 640 P.2d 1061 (1982), cited by Mr. Wendt, held a person's refusal to disclose his name, address or other information cannot be the basis of an arrest. *White* found RCW 9A.76.020, a statute prohibiting obstruction of a public servant, unconstitutionally vague.[10] Independent of RCW 9A.76.020, no grounds existed to justify Mr. White's arrest. *White,* at 96. The statute was termed a "stop–and–identify" statute. It was found to be defective because it failed to give fair notice of what activities are required or forbidden and because it encourages arbitrary and erratic stops and arrests. *White,* at 99. It specifically noted one problem with the statute was determining what information was "lawfully required" in the way of reports or information. *White,* at 99. *White,* at 100, found the determination of what information is lawfully required was a subjective question left to the unfettered

---

[10]RCW 9A.76.020 (as quoted in *White,* at 95–96) provides as follows:

"Obstructing a public servant. Every person who, (1) without lawful excuse shall refuse or knowingly fail to make or furnish any statement, report, or information lawfully required of him by a public servant, or (2) in any such statement or report shall make any knowingly untrue statement to a public servant, or (3) shall knowingly hinder, delay, or obstruct any public servant in the discharge of his official powers or duties; shall be guilty of a misdemeanor."

discretion of not only police officers but other public officials under this statute.

■ Unlike the statute in *White,* Sunnyside's ordinance applied only to law enforcement officers. Also, the information required to prepare the report is not totally within the discretion of the officer, since what is necessary or appropriate for an accident report would tend to limit inquiry. Information from a driver's license is an appropriate inquiry. At a minimum it would be necessary to confirm the names and addresses of the drivers involved and a driver's license would facilitate this.

The City argues a Bellevue Municipal Ordinance,[11] similar to the Sunnyside Municipal Ordinance, was upheld in *Bellevue v. Acrey,* 37 Wn. App. 57, 678 P.2d 1289, *rev'd on other grounds,* 103 Wn.2d 203, 691 P.2d 957 (1984). Unlike the ordinance in *White,* the Bellevue ordinance did not require a citizen to make any statement when asked to do so by a public officer; rather, it only made it illegal to make a willfully untrue, misleading or exaggerated statement to a public officer. *Bellevue,* at 62. The Sunnyside ordinance also requires no answer to the officer's inquiry. However, unlike *Bellevue,* it is not the making of a statement but rather the willful hindrance, delay, or obstruction of a law enforcement officer in the discharge of his duties by refusing to produce a driver's license that is at issue here. We believe the Fourth Amendment concern about unreasonable intrusions into a citizens' lives, raised by the ordinance in *White,* is not present where the officer's duty to prepare an accident report is reasonably aided by production of a driver's license. We hold the Sunnyside ordinance is not unconstitutionally vague.

---

[11]The former Bellevue ordinance, section 10.16.030 (as quoted in *Bellevue v. Acrey,* 37 Wn. App. 57, 61, 678 P.2d 1289, *rev'd on other grounds,* 103 Wn.2d 203, 691 P.2d 957 (1984)), provides:

"Obstructing public officers.

"It is unlawful for any person to make any wilfully untrue, misleading or exaggerated statement, or to wilfully hinder, delay or obstruct any public officer in the discharge of his official powers or duties."

Probable cause to make a warrantless arrest exists if a police officer has reasonably reliable information which would justify belief that a defendant committed an offense. *State v. Smith*, 102 Wn.2d 449, 453, 688 P.2d 146 (1984). There was probable cause to support Mr. Wendt's arrest for violation of obstructing a law enforcement officer.

Mr. Wendt's conviction of negligent driving is reversed; his conviction for obstructing a law enforcement officer is affirmed.

MUNSON and THOMPSON, JJ., concur.

Reconsideration denied August 4, 1988.