251 P.3d 877 (2011)
STATE of Washington, Respondent,
v.
Michael Deroun WILLIAMS, Petitioner.
No. 83992-1.
Supreme Court of Washington, En Banc.
Argued January 13, 2011.
Decided May 12, 2011.
*878 Kathryn A. Russell Selk, Russell Selk Law Office, Seattle, WA, for Petitioner.
Michelle Luna-Green, Kimberley Ann Demarco, Pierce County Prosecutor's Office, Tacoma, WA, for Respondent.
CHAMBERS, J.
¶ 1 Michael Williams drove away from a Les Schwab dealership without paying for his new tires and wheels. An employee called the police, and officers tracked down Williams at his girl friend's home. Williams admitted to the officer he had driven away without paying but gave his brother's name instead of his own, apparently to avoid discovery of an outstanding warrant for a community custody violation. Williams was convicted of first degree theft, making a false statement to a public servant, and obstructing a law enforcement officer. Williams appealed, arguing that legislative history and case law show the obstruction statute applies only where there is some conduct in addition to false statements. The Court of Appeals affirmed his conviction. We reverse the Court of Appeals and hold the obstruction statute requires some conduct in addition to making false statements.

FACTS AND PROCEDURAL HISTORY
¶ 2 Williams went to a Les Schwab dealership to have new tires and wheels installed on his girl friend's Jeep Cherokee. When the work was completed, Williams attempted to pay the $1,694.96 bill with a check. The check was rejected by a verification service, and Williams and a store employee agreed that Williams would go to the bank and return with the money. The employee told Williams to leave the keys and the car. Williams left the keys before he departed, but the employee later noticed the Jeep was gone. After attempting unsuccessfully to contact Williams, the employee called the police.
¶ 3 The dealership had the license number for the Jeep, and the police soon determined the registered owner. When they arrived at the owner's apartment they found both the Jeep and Williams. Williams admitted he had driven away from the dealership without paying and said he had gone to run errands but meant to return and pay. When asked to identify himself, he gave his brother's name instead of his own. When Williams was seemingly unable to remember or produce any other identifying information, and when the police found the physical description *879 of his brother did not match his appearance, he was arrested. It was then revealed during booking that his real name was Michael Deroun Williams and he had an outstanding arrest warrant. Williams was charged and convicted of first degree theft, obstructing a law enforcement officer, and making a false or misleading statement to a public servant. The false statement and obstruction convictions were both based on his providing false information to the police. Williams appealed only the obstruction conviction. The Court of Appeals affirmed, holding that under the plain language of RCW 9A.76.020(1), providing false information, by itself, is sufficient to support a conviction for obstruction. State v. Williams, 152 Wash.App. 937, 219 P.3d 978 (2009).

ANALYSIS

I. STANDARD OF REVIEW
¶ 4 Resolution of this appeal requires construction of the statute criminalizing obstruction of an officer. Construction of a statute is a question of law we review de novo. State v. Wentz, 149 Wash.2d 342, 346, 68 P.3d 282 (2003). The court's duty in statutory interpretation is to discern and implement the legislature's intent. State v. J.P., 149 Wash.2d 444, 450, 69 P.3d 318 (2003). Where possible, we construe statutes so as to preserve their constitutionality. In re Pers. Restraint of Matteson, 142 Wash.2d 298, 307, 12 P.3d 585 (2000) (quoting Addleman v. Bd. of Prison Terms, 107 Wash.2d 503, 510, 730 P.2d 1327 (1986)).

II. STATUTORY CONSTRUCTION
¶ 5 Williams' false statements about his identity led to two separate convictions under two separate statutes. RCW 9A.76.175 prohibits a person from knowingly making a false or misleading material statement to a public servant.[1] Because Williams did not challenge his conviction under this statute it is not before us.
¶ 6 Williams was also convicted of obstructing an officer under RCW 9A.76.020:
(1) A person is guilty of obstructing a law enforcement officer if the person willfully hinders, delays, or obstructs any law enforcement officer in the discharge of his or her official powers or duties.
(2) "Law enforcement officer" means any general authority, limited authority, or specially commissioned Washington peace officer or federal peace officer as those terms are defined in RCW 10.93.020, and other public officers who are responsible for enforcement of fire, building, zoning, and life and safety codes.
(3) Obstructing a law enforcement officer is a gross misdemeanor.
Although his arguments are based on constitutional grounds, Williams does not challenge the constitutionality of RCW 9A.76.020. Instead, Williams contends that his conduct did not fall within the meaning of the statute because Washington courts have long construed it and its predecessors as requiring some conduct in addition to pure speech in order to avoid constitutional infirmities.[2]
¶ 7 Williams is correct that Washington courts have long limited the application of obstruction statutes based upon speech and have held a statute with similar language unconstitutional. Forty years ago, the Washington Court of Appeals interpreted a municipal ordinance, modeled after a predecessor of the statute before us. City of Mountlake Terrace v. Stone, 6 Wash.App. 161, 492 P.2d 226 (1971). Luther Stone, a jogger, was walking near his home in the city of Mountlake Terrace. Id. at 162-63, 492 P.2d 226. A Mountlake Terrace officer drove by and observed that Stone was breathing heavily, perspiring, wearing dark clothing, and carrying what the officer described to be *880 a "`Russian type hat.'" Id. The officer pulled his car alongside Stone and the two exchanged greetings as Stone continued to walk and the officer drove alongside him. Id. The officer requested Stone identify himself, provide identification, and explain his presence. Id. Stone asked if his response would be voluntary or required. Id. When the officer stated that he would be required to produce identification and answer questions, Stone declined, stating that he did not believe that the officer had the right to require identification or a response to questions. Id. Stone proceeded to his home. Id. The officer, now with backup, went to Stone's house where the two continued their discussion. Id. Eventually Stone was arrested and charged with obstructing an officer. Id. Stone challenged the constitutionality of the ordinance.[3]
¶ 8 The Court of Appeals noted that "`[t]o be consistent with due process, a penal statute or ordinance must contain ascertainable standards of guilt, so that men of reasonable understanding are not required to guess at the meaning of the enactment.'" Id. at 164, 492 P.2d 226 (quoting City of Seattle v. Drew, 70 Wash.2d 405, 408, 423 P.2d 522 (1967)). Further, "[a]n ordinance that restricts such freedom must contain standards that are reasonable and that do not permit arbitrary enforcement." Id. The court observed that, "[t]he interrogatee, in determining whether the officer may lawfully require an answer, must ask himself whether the demandable answers include answers which are privileged by statute, decision, or the Const. art. 1, or by the first, third, fourth, fifth, ninth, and fourteenth amendments to the United States Constitution." Id. at 168, 492 P.2d 226. The court found the portions of the ordinance prohibiting refusal to give information to an officer vague and violative of the Fourteenth Amendment.
¶ 9 In 1978, this court addressed the statute after which the Mountlake Terrace ordinance was modeled, former RCW 9.69.060 (1909).[4]State v. Grant, 89 Wash.2d 678, 575 P.2d 210 (1978). Jean Grant was charged with obstructing an officer who was in the process of arresting the driver for intoxication while driving the vehicle in which she was riding. Id. at 680-81, 575 P.2d 210. Not unaffected by drink herself, Grant engaged in more than just speech to prompt the obstruction of an officer charge. Id. at 680-81, 686, 575 P.2d 210. In affirming her conviction we distinguished Stone, noting that only a portion of the statute had been found to be unconstitutionally vague in that case. Id. at 685-86, 575 P.2d 210. We concluded the remaining portion of the statute was constitutionally adequate because it focused on conduct rather than speech. Id.; see also State v. Lalonde, 35 Wash.App. 54, 59, 60, 665 P.2d 421 (1983) (noting that "[u]nless a First Amendment freedom is involved, the statute must be examined in light of the facts in the case at issue" and holding that under the facts of the case, former RCW 9A.76.020 (1995) was not vague because it "focused on conduct other than speech").
¶ 10 Four years after we decided Grant, this court was called upon to interpret the successor statute to the one at issue in Grant, former RCW 9A.76.020 (1975).[5]State *881 v. White, 97 Wash.2d 92, 640 P.2d 1061 (1982), called into question on other grounds by State v. Afana, 169 Wash.2d 169, 182 n. 8, 233 P.3d 879 (2010). In White, an officer responded to a report of a suspicious person hanging around a neighborhood near the railroad tracks. Id. at 95, 640 P.2d 1061. The responding officer saw Allen White carrying a large plastic garbage bag containing such items as kerosene, charcoal, magazines, and a skillet. Id. The officer asked for identification and White denied having any; the officer then asked for his name to which White answered truthfully. Id. When asked where he lived, White answered evasively and pointed down the road toward some houses but could not specify in which house he lived. Id. The officer noticed a bulge in White's back pocket that turned out to be a wallet that, when produced, revealed a British Columbia driver's license. Id. White was placed under arrest for violating former RCW 9A.76.020(1) (refusing to furnish information) and (2) (making a knowingly untrue statement). White, 97 Wash.2d at 95, 640 P.2d 1061. Thereafter, White confessed to burglarizing a shed from which he took the items in the garbage bag. Id. The question before us was whether there was a lawful arrest.
¶ 11 Although White had answered untruthfully, we held the statute unconstitutional and White's arrest unlawful. We found subsections (1) and (2) of former RCW 9A.76.020 unconstitutionally vague, but vagueness was not our only concern. We noted that such statutes can "result in disturbing intrusions into an individual's right to privacy and can implicate other rights specifically enumerated in the Bill of Rights." White, 97 Wn.d at 97. Discussing both the Fourth Amendment's protection from unreasonable search and our state constitution's article I, section 7, we held that, in addition to being vague, the statute "encourages arbitrary and erratic stops and arrests." Id. at 99, 640 P.2d 1061. We were also concerned that the stop and identify statute was an unwarranted extension of the "Terry Stop," which required the officer to provide specific and articulable facts that gave rise to a reasonable suspicion that there was criminal activity afoot.[6]Id. at 105-06, 640 P.2d 1061. We applied the exclusionary rule to the evidence obtained following White's arrest, saying, "[i]f we were to permit the use of evidence obtained incident to an arrest under this statute, we would allow the Legislature to make an `end run' around the Fourth Amendment."[7]Id. at 106-07, 640 P.2d 1061.
¶ 12 Our decision in White invalidated subsections (1) and (2) of former RCW 9A.76.020 but left intact subsection (3), which provided that any person who "shall knowingly hinder, delay, or obstruct any public servant in the discharge of his official powers or duties; shall be guilty of a misdemeanor." Id. at 96, 101, 640 P.2d 1061. Following White, in several instances prosecutors charged persons who gave public officers false information (such as false names) or who refused to give any information with obstruction under subsection (3), the hinder and delay prong. Courts rejected this approach, concluding that the legislature had intended subsections (1) and (2) to specifically address refusing to provide information and providing false or misleading statements and that subsection (3) was intended to prohibit conduct. State v. Hoffman, 35 Wash.App. 13, 16-17, 664 *882 P.2d 1259 (1983); State v. Swaite, 33 Wash. App. 477, 482-83, 656 P.2d 520 (1982).
¶ 13 Following our declaration that subsections (1) and (2) of former RCW 9A.76.020 were unconstitutional, the legislature took no action for 12 years. The legislature eventually responded in 1994, rewriting RCW 9A.76.020 with only two subsections prohibiting "(a) [w]illfully mak[ing] a false or misleading statement to a law enforcement officer who has detained the person during the course of a lawful investigation or lawful arrest" and "(b) [w]illfully hinder[ing], delay[ing], or obstruct[ing] any law enforcement officer in the discharge of his or her official powers or duties." LAWS OF 1994, ch. 196, § 1. Finally, the legislature removed the false statement prong just one year after the 1994 amendment, so that RCW 9A.76.020(1) now contains only the "hinders, delays, or obstructs" language. LAWS OF 1995, ch. 285, § 33. At the same time, it created a new statute, RCW 9A.76.175, which specifically prohibits "knowingly mak[ing] a false or misleading material statement to a public servant." Id. at § 32. The statutes have not changed since 1995.[8] Thus, the former statute became two statutes: one, the false or misleading statements statute; and the other, the obstruction statute, with the latter having only a "hinder and delay" prong. Compare RCW 9A.76.175 with RCW 9A.76.020.
¶ 14 The Court of Appeals was the first to interpret the newly arranged statute. State v. Williamson, 84 Wash.App. 37, 43-45, 924 P.2d 960 (1996). Police encountered Spartacus Williamson when they responded to a call about a fight in a parking lot. Id. at 39-40, 924 P.2d 960. When Williamson stated several times to the investigating officer that his name was "Christopher Columbus," he was arrested and was charged with obstruction under subsection (b), "[w]illfully hinders, delays, or obstructs any law enforcement officer."[9]Id. at 44-45, 924 P.2d 960. But the only evidence presented was that the defendant had given a false name to police. Id. The Court of Appeals again held that "hinder, delay, or obstruct" applied to conduct, not speech, and that false statements had to be charged specifically under the false statement prong of the newly amended statute. Id. Further, the court observed, "[We are not] persuaded by the State's argument that the response, `Christopher Columbus,' was conduct, not speech." Id. at 45, 924 P.2d 960; cf. State v. Contreras, 92 Wash.App. 307, 316, 966 P.2d 915 (1998) (refusal to put hands up in view, to exit the car, to keep hands on top of car as instructed and providing a false name held to be conduct for purposes of obstruction).
¶ 15 Williams asserts this history indicates that making false statements has long been distinguished by both our courts and legislature from conduct that hinders, delays, or obstructs. Suppl. Br. of Pet'r at 14-15. He points out that "when our Legislature enacts a statute, it is presumed to be familiar with judicial interpretations of statutes and, absent an indication it intended to overrule a particular interpretation, amendments are presumed to be consistent with previous judicial decisions." State v. Bobic, 140 Wash.2d 250, 264, 996 P.2d 610 (2000). Since the judicial decisions relating to the "hinders, delays, or obstructs" language in RCW 9A.76.020(1) uniformly hold that that language governs conduct and not speech, Williams argues, the legislative intent cannot have been to create a statute to govern speech using the same language. Suppl. Br. of Pet'r at 17.
¶ 16 The State concedes that it may not criminalize a person's exercise of the right to remain silent. A person cannot be punished for refusing to speak. See Contreras, 92 Wash.App. at 316, 966 P.2d 915. But, the State argues, once a person does speak to a law enforcement officer, a person may not willfully make false statements with the intent to hinder or delay. "Clearly it is not the content of the statement that is at issue, but *883 the speaker's willful attempt to hinder, delay, or obstruct." Resp't's Suppl. Br. at 12. The State relies largely on its reading of the plain language of the statute.[10]Id.
¶ 17 Our constitution strongly protects a sphere of personal privacy and autonomy. Although we have expressed concerns about obstruction statutes predicated on speech based upon the Fourth Amendment of the United States Constitution, article I, section 7 of the Washington Constitution provides even greater protection from governmental intrusions. See State v. Morse, 156 Wash.2d 1, 9-10, 123 P.3d 832 (2005). The Fourth Amendment forbids only "unreasonable" searches and seizures, thus implicitly recognizing the government's power to conduct "reasonable" searches. Terry v. Ohio, 392 U.S. 1, 19-20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Adopted a century after the federal constitution, the Washington Constitution embodies a significantly different approach to limiting the government's power to search. Article I, section 7 is brief and to the point: "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." The words "reasonable" and "unreasonable" do not appear in article I, section 7. State v. Eisfeldt, 163 Wash.2d 628, 635, 185 P.3d 580 (2008); State v. Day, 161 Wash.2d 889, 896, 168 P.3d 1265 (2007); Morse, 156 Wash.2d at 9, 123 P.3d 832. Thus even reasonable searches may contravene article I, section 7 if they are without the authority of law.
¶ 18 We have held that "authority of law" requires a search warrant or that the government agent acts in conformity with one of the recognized and narrowly drawn exceptions to the warrant requirement. Eisfeldt, 163 Wash.2d at 635, 185 P.3d 580. A search incident to arrest is one of those exceptions. State v. O'Neill, 148 Wash.2d 564, 585, 62 P.3d 489 (2003). Based upon the text of article I section 7, however, we have declined to follow federal courts in creating "good faith" exceptions to the exclusionary rule for warrantless searches. Morse, 156 Wash.2d at 9-10, 123 P.3d 832. We have therefore viewed statutes that purport to authorize police officers to stop and arrest based upon pure speech in light of these important constitutional protections. We keep these principles in mind today.
¶ 19 We hew to our jurisprudential history of requiring conduct in addition to pure speech in order to establish obstruction of an officer. The legislature made it a separate crime to knowingly make a false or misleading statement to a public officer. See RCW 9A.76.175. The legislature was aware that, in order to find obstruction statutes constitutional, appellate courts of this state have long required conduct. See Bobic, 140 Wash.2d at 264, 996 P.2d 610. We have done so not only because of concern that criminalizing pure speech would implicate freedom of speech. We have done so because of further concerns that law enforcement officers, without probable cause or even reasonable suspicion that a crime is being committed, may engage citizens in conversation, arrest them for obstruction based upon false statements, and then search incident to the arrest. As we said in White of the stop and identify statute, such statutes cannot be used to make an "end run" around constitutional limitations on searches and seizures. See White, 97 *884 Wash.2d at 106-07, 640 P.2d 1061. Our constitution puts constraints on the State and guarantees certain protections and liberties to the people. Our continued interpretation of obstruction statutes as requiring some conduct ensures these constitutional limits are maintained.

CONCLUSION
¶ 20 In order to avoid constitutional infirmities, we require some conduct in addition to making false statements to support a conviction for obstructing an officer. We vacate Williams' conviction for obstructing a law enforcement officer.
WE CONCUR: BARBARA A. MADSEN, Chief Justice, concurs in result, CHARLES W. JOHNSON, GERRY L. ALEXANDER, SUSAN OWENS, MARY E. FAIRHURST, JAMES M. JOHNSON, DEBRA L. STEPHENS, and CHARLES K. WIGGINS, Justices.
NOTES
[1] The statute states in full:

A person who knowingly makes a false or misleading material statement to a public servant is guilty of a gross misdemeanor. "Material statement" means a written or oral statement reasonably likely to be relied upon by a public servant in the discharge of his or her official powers or duties.
RCW 9A.76.175.
[2] Williams also argues that his counsel was ineffective for failing to object to the obstruction conviction. Because we overturn his obstruction conviction on the basis of statutory interpretation, we do not reach his ineffective assistance claim.
[3] The ordinance stated:

"Every person who, after due notice, shall refuse or neglect to make or furnish a statement, report or information lawfully required of him by any public officer, or who, in such statement, report or information shall make any willfully untrue, misleading or exaggerated statement, or who shall willfully hinder, delay or obstruct any public officer in the discharge of his official powers or duties, shall be guilty of a misdemeanor."
Stone, 6 Wash.App. at 162, 492 P.2d 226 (emphasis omitted) (quoting City of Mountlake Terrace Ordinance 405, repealed by Ordinance 1137 (not codified)). This ordinance was copied from the state statute in effect at the time, former RCW 9.69.060 (1909). Id. at 165, 492 P.2d 226. Former RCW 9.69.060 was repealed when the precursor to the statutes at issue here was adopted in 1975. See LAWS OF 1975, 1st Ex. Sess., ch. 260, § 9A.92.010(179). The language of former RCW 9.69.060, however, remained largely the same in the newly enacted RCW 9A.76.020. See RCW 9A.76.020.
[4] The statute was essentially identical to the Mountlake Terrace ordinance. See supra note 2.
[5] The statute stated:

Obstructing a public servant. Every person who, (1) without lawful excuse shall refuse or knowingly fail to make or furnish any statement, report, or information lawfully required of him by a public servant, or (2) in any such statement or report shall make any knowingly untrue statement to a public servant, or (3) shall knowingly hinder, delay, or obstruct any public servant in the discharge of his official powers or duties; shall be guilty of a misdemeanor.
Former RCW 9A.76.020.
[6] The term "Terry Stop" comes, of course, from the eponymous case, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[7] The United States Supreme Court has held that under the Fourth Amendment, an arrest made in reliance on an ordinance is valid for purposes of the exclusionary rule even if the ordinance is later found unconstitutional, "with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws." Michigan v. DeFillippo, 443 U.S. 31, 38, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). To the extent that White interpreted DeFillippo as announcing a "good faith" exception to the exclusionary rule, and as such rejected it under our state constitution, its interpretation has been called into question by later cases. See Afana, 169 Wash.2d at 182 n. 8, 233 P.3d 879.
[8] The legislature reenacted both statutes without changes in 2001 in response to State v. Thomas, 103 Wash.App. 800, 14 P.3d 854 (2000). LAWS OF 2001, ch. 308, §§ 2, 3.
[9] Although this case was published after the final amendment creating two separate statutes, the statute at issue was the 1994 version that, as just explained, contained both a "false statement" subsection and a "hinder and delay" subsection.
[10] The State does cite several cases for its proposition. Each is distinguishable. In Contreras, which we have already discussed, the defendant not only gave a false name but refused to comply with orders to keep his hands in view and exit the vehicle. Contreras, 92 Wash.App. at 316, 966 P.2d 915. The State also points to two other cases for support, State v. Turner, 103 Wash.App. 515, 13 P.3d 234 (2000) and City of Sunnyside v. Wendt, 51 Wash.App. 846, 851-52, 755 P.2d 847 (1988). But in Turner, the court upheld an obstruction conviction where "Turner not only refused to give his name, he threatened [the officer] and lunged at him." Turner, 103 Wash.App. at 525, 13 P.3d 234 (emphasis added). And in Wendt, the court was interpreting a city ordinance which, unlike the statute under which Williams was charged in this case, expressly provided for false statements, not just "hindering, delaying, or obstructing" an officer. Wendt, 51 Wash.App. at 851, 755 P.2d 847 (citing former Sunnyside Municipal Code 9.56.020 (Ord. 1519 § 1, 1985)). Wendt is not a model of clarity, but to the extent that it can be read to support the State's position, it stands alone against the weight of other authority. See White, 97 Wash.2d 92, 640 P.2d 1061; Grant, 89 Wash.2d 678, 575 P.2d 210; Williamson, 84 Wash.App. 37, 924 P.2d 960; Hoffman, 35 Wash.App. 13, 664 P.2d 1259; Swaite, 33 Wash.App. 477, 656 P.2d 520.