IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON<br><br>        Appellant,<br><br>   v.<br><br>HALL, JESSE PATRICK,<br>DOB: 08/05/1980,<br><br>        Respondent. | No. 77798-0-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br><br><br>FILED: September 30, 2019 |

SCHINDLER, J. — The State charged Jesse Patrick Hall with identity theft in the second degree committed while on community custody. The to-convict jury instruction required the State to prove beyond a reasonable doubt that Hall knowingly used the identification of another person to commit any crime. Consistent with the amended information and at the request of the prosecutor, the court instructed the jury only on the crime of obstructing a law enforcement officer in the discharge of official duties. The trial court granted the defense motion to arrest judgment, vacated the jury verdict, and dismissed on the grounds of insufficient evidence. We affirm.

## FACTS

Lake Stevens Police Officer Michael Hingtgen was on patrol the night of February 2, 2017. At approximately 10:36 p.m., Officer Hingtgen noticed a vehicle with an inoperable brake light traveling in excess of the posted 35 m.p.h. speed limit. Officer

Hingtgen activated his emergency lights and pulled over the vehicle for speeding. The car "immediately" pulled over to the side of the road and stopped.

As Officer Hingtgen approached the car, a man, later identified as Jesse Patrick Hall, rolled down the window. Officer Hingtgen asked Hall for his driver's license, registration, and proof of insurance. Hall told Officer Hingtgen that he "didn't have his license on him." When Officer Hingtgen asked Hall for other information "to confirm identity," Hall identified himself as "Mitch G. Stamey" and gave a birth date of January 17, 1972. Hall was unable to provide Officer Hingtgen with the last four digits of his social security number. After several seconds of Hall "kind of holding his head into his hands," he gave Officer Hingtgen an address in Everett.

Officer Hingtgen returned to his patrol car and "ran Mitch Stamey's information" using the police database. Officer Hingtgen discovered Stamey had an "active misdemeanor warrant." The warrant described Stamey as having numerous tattoos. A Washington State Department of Licensing (DOL) photograph of Stamey showed a tattoo on the right side of his neck.

Because Officer Hingtgen was not confident that Hall was Stamey, he asked Hall to show him the neck tattoo. Hall acknowledged he had an outstanding arrest warrant and gave Officer Hingtgen his "full and correct name" of Jesse Patrick Hall. Officer Hingtgen confirmed there was an outstanding warrant and placed Hall under arrest.

The State charged Hall with criminal impersonation in the first degree committed while on community custody. On July 20, 2017, the State filed an amended information charging Hall with identity theft in the second degree committed while on community

2

custody by using another person's identification to commit the crime of obstructing a law enforcement officer. The amended information alleged:

> COUNT 1: SECOND DEGREE IDENTITY THEFT (crimes on or after 7/22/01) CRIME COMMITTED WHILE ON COMMUNITY CUSTODY, committed as follows:
> That the defendant, on or about the 2nd day of February, 2017, did knowingly obtain, possess, use and transfer a means of identification and financial information of a person, to-wit: Mitch Stamey, with the intent to commit, aid and abet a crime, to-wit: Obstructing a Law Enforcement Officer, in violation of RCW 9A.76.020; proscribed by RCW 9.35.020(1) and (3), a felony; and the crime was committed while the defendant was under community custody, as provided by RCW 9.94A.525(19).[1]

Only two witnesses testified at trial: Officer Hingtgen and Snohomish County Prosecutor's Office legal assistant Rebecca Orr. The court admitted two exhibits into evidence: a DOL photograph of Stamey, exhibit 1; and a DOL photograph of Hall, exhibit 2. Orr testified that she coordinates witnesses for trial and met with Stamey to arrange his testimony for the trial. Orr identified exhibit 1 as an accurate photograph of Mitch Stamey.

During cross-examination, Officer Hingtgen testified that Hall waited in the car and did not try to flee when Officer Hingtgen used the police database to obtain information. Officer Hingtgen testified that immediately after he confronted Hall about the neck tattoo, Hall told him he had an outstanding warrant and gave Officer Hingtgen his correct name.

> Q. You told him that Mitch has tattoos and the driver of the vehicle didn't try to describe all the tattoos they had to try to show they were that person; correct?
> A. No. No, there was nothing showing at all.
> Q. And he didn't change the topic at all away from the topic of tattoos?
> A. No, he did not.

---

[1] Most emphasis added.

Q. He didn't try to look through the car to find any paperwork or justification to claim that he might be Mr. Stamey; correct?

A. No, he did not.

Q. Even after you confronted him in a way to show that you didn't believe he was Mr. Stamey, he didn't attempt to get out of [the] vehicle at that time?

A. No, he did not.

Q. He didn't try to change your mind?

A. No.

Q. And he didn't continue to state he was Mr. Stamey?

A. No, he did not.

Officer Hingtgen also testified that Hall was cooperative, obeyed commands, and did not attempt to resist arrest.

Q. And you didn't note there were any incidents or problem with removing him from the vehicle?

A. No, he was cooperative.

. . . .

Q. You didn't have to tell him multiple times to exit the vehicle?

A. No, I only told him once.

Q. So he followed your instructions at that point?

A. Correct.

Q. And you were able to subsequently restrain him without any further incident?

A. Yes, ma'am.

Q. Okay. You handcuffed him?

A. Yes.

. . . .

Q. And after you arrested him, he identified himself; correct?

A. Yes, ma'am.

. . . .

Q. And he didn't try to talk you out of arresting him?

A. No.

Q. He didn't move around a lot to avoid getting in the back of the car?

A. No, he didn't fight at all.

Q. He didn't try to run away?

A. No.

Q. Didn't kick his legs out when getting into the vehicle?

A. No.

Q. Didn't scream or yell on his way to jail?

A. No.

At the conclusion of trial, the court instructed the jury on the elements of identity theft and the crime of obstructing a law enforcement officer. During closing argument, the prosecutor told the jury that Hall used Stamey's identification "to obstruct a law enforcement officer" by "trying to avoid being arrested on his warrant" but "failed and got caught."

> This is what you have to decide today, so it is a good place to start when figuring out how you are going to go through your deliberations. What do I have to prove to you for you to return a verdict of guilty? The first is that on or about the 2nd day of February 2017, you heard that on that date that the Defendant knowingly used a means of identification of another person. . . .
>
> So information that we have in this case is that the Defendant used Mitch Stamey's name full name — well, middle initial and said, Mitch G. Stamey. He gave his date of birth, which is the same date of birth listed on Mitch Stamey's driver's license, and he gave an address in Everett. . . . .
>
> Element No. 2 on your to convict instruction, that the Defendant did this with the intent to commit any crime. So why was he doing this is the question here, and what I told you is he is doing this to avoid arrest on his warrant. More technical legal terms. He was doing it to obstruct a law enforcement officer, which is Instruction No. 10, obstructing a law enforcement officer, who is Officer Hingtgen, from performing his duties to arrest people on warrants or give citations for speeding. You heard the officer testify that this is part of his duties as an officer. So that is what he was doing when he was trying to avoid being arrested on his warrant.
>
> . . . .
>
> . . . He was hoping that he looked enough like Mitch Stamey that he could get off scott free. What he didn't bank on was Officer Hingtgen and his attention to detail, noticing there is a neck tattoo on that photo. He wasn't banking on Mitch Stamey having a warrant. That was probably the last thing he wanted to have happen. That's some bad luck, but don't fall for the bate-and-switch. This is not a trial about obstruction. There is an instruction in there on what obstruction means, what obstructing a law enforcement officer means, because it is helpful to deciding whether or not the Defendant intended to commit that crime.

After the court submitted the case to the jury, Hall filed a motion to dismiss. Defense counsel argued that because Hall used only speech to provide a false identity to Officer Hingtgen, the State did not prove beyond a reasonable doubt his "intent to

obstruct" and commit the crime of identity theft in the second degree. The prosecutor argued the State did not "have to prove that [Hall] completed that crime, just what his intent was" to commit the crime of obstructing a law enforcement officer. During a recess to consider the briefing, the jury returned a verdict finding Hall guilty of identity theft in the second degree as charged.

The court then considered the motion to dismiss as a motion to arrest judgment under CrR 7.4(a)(3) ("Judgment may be arrested on the motion of the defendant for . . . insufficiency of the proof of a material element of the crime."). The court granted the motion, vacated the jury verdict, and dismissed the charge with prejudice under CrR 7.4(c).[2] The court ruled, in pertinent part:

> The case law regarding identity theft in the second degree establishes that the State must prove that the Defendant intended to commit any crime. . . . [T]he State is not required to elect a crime but also may not put the jury in a position that it has to guess which crime the Defendant committed.
> Here the State approached this obligation by choosing obstructing the law enforcement officer as the crime the Defendant intended to commit. . . .
> . . . [T]he crime of obstructing a law enforcement officer requires more than speech, it also requires conduct. . . .
> . . . .
> Here defense counsel through careful questioning of the State's law enforcement witness established that there was nothing in Defendant's conduct that could have held him culpable for the crime of obstructing under RCW 9A.76.020, which is the obstruction statute. Thus, the question here is whether the Defendant's motion to dismiss the charge of identity theft in the second degree, or challenge to the sufficiency of the evidence if it should be cast in that light, should be granted and the verdict set aside because, one, the State chose to identify obstructing a law enforcement officer as the crime that Mr. Hall intended to commit; and

---

[2] CrR 7.4(c) states:

New Charges After Arrest of Judgments. When judgment is arrested and there is reasonable ground to believe that the defendant can be convicted of an offense properly charged, the court may order the defendant to be recommitted or released to answer a new indictment or information. If judgment was arrested because there was no proof of a material element of the crime the defendant shall be dismissed.

6

two, there is no evidence from which a rational trier of fact could find Mr. Hall committed the crime of obstructing a law enforcement officer, that conclusion being supported by the evidence that Mr. Hall's misconduct was limited to speech and did not involve any physical conduct; and three, therefore, there is no evidence that he intended to commit the crime of obstructing.

The court entered an "Order Arresting Judgment and Dismissing Cause." The order incorporates the court's oral ruling that insufficient evidence supports finding "a material element of the crime."

## ANALYSIS

The State appeals the order arresting judgment and dismissing the charge of identify theft in the second degree. The State contends the court erred when it arrested judgment and dismissed the charge against Hall. The State argues sufficient evidence supports the conviction for identity theft in the second degree.

"A motion in arrest of judgment challenges the sufficiency of the evidence to take the case to the jury." State v. Randecker, 79 Wn.2d 512, 515, 487 P.2d 1295 (1971). Evidence is sufficient to support a conviction if, viewed in the light most favorable to the State, any rational trier of fact may find the essential elements of the crime beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." Salinas, 119 Wn.2d at 201.

The State has the burden to prove every element of the crime charged beyond a reasonable doubt. U.S. CONST. amend. XIV; WASH. CONST. art. I, § 3; In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970) ("[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."). Sufficiency

of the evidence is a question of constitutional law that we review de novo. State v. Rich, 184 Wn.2d 897, 903, 365 P.3d 746 (2016).

To convict Hall of identity theft in the second degree, the State had the burden of proving beyond a reasonable doubt that Hall knowingly used the identification of another person with the "intent to commit, or to aid or abet, any crime." RCW 9.35.020.

The State charged Hall by amended information with identity theft in the second degree, alleging he committed the crime of obstructing a law enforcement officer. The to-convict jury instruction states, in pertinent part:

> To convict the defendant of the crime of identity theft in the second degree, the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about 2nd day of February, 2017, the defendant knowingly obtained, possessed, or used a means of identification or financial information of another person;[3]
> (2) That the defendant did so with the intent to commit any crime;
> (3) That the defendant knew that the means of identification or financial information belonged to another person; and
> (4) That any of these acts occurred in the State of Washington.[4]

Consistent with the amended information, the prosecutor asked the court to instruct the jury on the crime of obstructing a law enforcement officer. The jury instruction defining the crime states:

> A person commits the crime of obstructing a law enforcement officer when he or she willfully hinders, delays, or obstructs any law enforcement officer in the discharge of the law enforcement officer's official powers or duties.

---

[3] The court instructed the jury on the definition of "means of identification" as follows:

"Means of identification" means information or an item that is not describing finances or credit, but is personal to or identifiable with an individual or other person, including: a current or former name of the person, telephone number, an electronic address, or identifier of the individual or a member of his or her family, including the ancestor of the person; a social security, driver's license, or tax identification number of the individual or a member of his or her family; and other information that could be used to identify the person, including unique biometric data.

[4] Emphasis added.

In Washington, speech in the absence of additional conduct is insufficient to establish the crime of obstructing law enforcement. State v. Williams, 171 Wn.2d 474, 484-85, 251 P.3d 877 (2011). In Williams, when asked to identify himself by a police officer, the defendant provided the name of his brother instead of his own. Williams, 171 Wn.2d at 476. A jury convicted the defendant of obstructing a law enforcement officer. Williams, 171 Wn.2d at 476. On appeal, the State argued, "[O]nce a person does speak to a law enforcement officer, a person may not willfully make false statements with the intent to hinder or delay." Williams, 171 Wn.2d at 484. In rejecting this argument, our Supreme Court held, in pertinent part:

> We hew to our jurisprudential history of requiring conduct in addition to pure speech in order to establish obstruction of an officer. The legislature made it a separate crime to knowingly make a false or misleading statement to a public officer. See RCW 9A.76.175. The legislature was aware that, in order to find obstruction statutes constitutional, appellate courts of this state have long required conduct. See [State v.] Bobic, 140 Wn.2d [250,] 264[, 966 P.2d 610 (2000)].

Williams, 171 Wn.2d at 485; see State v. E.J.J., 183 Wn.2d 497, 503, 354 P.3d 815 (2015) ("As our history makes clear, conduct is prerequisite of an obstruction charge.").

The State argues sufficient evidence supports the conviction because the evidence shows intentionally giving Officer Hingtgen false identification information delayed the investigation.

Below and on appeal, the State relies on State v. Presba, 131 Wn. App. 47, 126 P.3d 1280 (2005), to argue sufficient evidence supports the conviction. Presba is distinguishable. In Presba, we concluded sufficient evidence supported the conviction of identity theft because the evidence supported the inference that Presba used the false identification information "to facilitate both the offense of RCW 9A.76.020,

9

obstructing a police officer, and RCW 46.61.020, giving false information." Presba, 131 Wn. App. at 55-56. In Presba, Melissa Presba was driving without a license. Presba, 131 Wn. App. at 55. When the state trooper stopped Presba for speeding, she gave the trooper "[Shyla] Dashiell's name, Social Security number, former address, and date of birth." Presba, 131 Wn. App. at 55, 50. After checking the information she provided, the trooper asked Presba why her social security number was "one digit off from what the Department had for the license record." Presba, 131 Wn. App. at 51. Presba told the trooper DOL "always had an incorrect number." Presba, 131 Wn. App. at 51. "[A]fter a half hour of continued discussion," Presba persuaded the trooper she was in fact Dashiell. Presba, 131 Wn. App. at 51. The trooper "cited her for the infraction of driving without her license on her person." Presba, 131 Wn. App. at 51.

Unlike in Presba, the court instructed the jury on only the crime of obstructing a law enforcement officer, and there is no evidence that Hall engaged in conduct that resulted in delay. After Officer Hingtgen checked the police database and asked Hall to show him the neck tattoo, Hall immediately acknowledged his true identity and told Officer Hingtgen he had an outstanding warrant. The undisputed record supports the conclusion that Hall's conduct was limited to speech only. Officer Hingtgen testified that Hall was "cooperative" throughout the traffic stop, investigation, and arrest.

For the first time in the reply brief, the State argues that under the "law of the case doctrine," the State was required to prove only that Hall intended to commit "any crime" when he used Stamey's identity. Specifically, that "[b]ecause the 'to convict' instruction listed the elements as 'intent to commit any crime[,]' that is what the jury had to find in order to convict the defendant." We do not consider arguments raised for the

first time in the reply brief.  State v. Chen, 178 Wn.2d 350, 358 n.11, 309 P.3d 410 (2013); State v. Hudson, 124 Wn.2d 107, 120, 874 P.2d 160 (1994).  Nonetheless, as previously noted, the prosecutor asked the court to instruct the jury only on the crime of obstructing a law enforcement officer.  The jury instructions make clear that obstructing a law enforcement officer was the only crime the State alleged Hall intended to commit.  See State v. Federov, 181 Wn. App. 187, 199, 324 P.3d 784 (2014).

We affirm the court's order arresting judgment and dismissing the charge of identity theft in the second degree.

Schindler, J

WE CONCUR:

Leach, J.

Appelwick, C.J.