[No. 19192-0-II.   Division Two.   October 25, 1996.]
THE STATE OF WASHINGTON, *Respondent*, v.
SPARTACUS B. WILLIAMSON, *Appellant*.

38

*Pattie Mhoon*, for appellant.

*John W. Ladenburg, Prosecuting Attorney*, and *Mark Von Wahlde, Deputy*, for respondent.

SEINFELD, C.J. — Spartacus Williamson appeals his convictions for being a minor in possession of a firearm and for obstructing a public servant. He contends that the information charging him with obstruction failed to state the essential elements of the crime. He also challenges the sufficiency of the evidence as to both offenses. We affirm the possession charge but conclude that the information did not properly charge the obstruction offense. Thus, we reverse the obstruction conviction.

## FACTS

Tacoma Police Officer Pat Frantz responded to a radio call reporting a fight "involving [the occupants of] a yellow pickup and two black males with a handgun" in a shopping center parking lot. The dispatcher said that store

security personnel had followed the two suspects out of the parking lot and that one suspect was wearing a long brown coat and the other was dressed in a blue shirt. Frantz saw two persons matching the description of the suspects near the shopping center. Williamson was one of the suspects.

Frantz followed the suspects in his patrol car. He saw Williamson walk about 50 yards, then crouch and disappear into a hedge near a "little driveway." It appeared to Frantz that Williamson had a "shiny metal object" in his hand. Minutes later, Frantz saw Williamson knocking on the front door of the house behind the hedge.

After police backup arrived, Frantz approached Williamson and searched him for a weapon. He did not find a weapon on Williamson's person, but in a search of the hedge where Williamson had first disappeared, police found a loaded, .38 caliber silver handgun.

Frantz read Williamson his *Miranda*[1] rights and asked him for his name. Williamson replied, "Christopher Columbus." Frantz testified that Williamson again stated "Christopher Columbus" when asked for his name at the police station. In order to determine Williamson's true identity, Frantz sent him to the identification department for a fingerprint check. It took about 30 to 45 minutes to complete this process and determine that "Christopher Columbus" was Spartacus Williamson.

The State charged Williamson with being a minor in possession of a firearm and with obstructing a public servant. The information described the obstruction count as follows:

And I, JOHN W. LADENBURG, Prosecuting Attorney aforesaid, do accuse the respondent of the additional crime of OBSTRUCTING A PUBLIC SERVANT, committed as follows:

That SPARTACUS B. WILLIAMSON, in Pierce County, Washington, on or about the 7th day of December, 1994, did

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

unlawfully and knowingly, hinder, delay or obstruct Officer P. Frantz, a public servant in the discharge of his official powers and duties, contrary to RCW 9A.76.020(3), and against the peace and dignity of the State of Washington.

To prove this charge at trial, the State introduced evidence that Williamson, after his arrest, provided Frantz with a false name, thereby forcing Frantz to go through additional work to establish his identity.

The juvenile court found Williamson guilty as charged. In its findings of fact, the court stated:

> Officer Frantz advised Williamson of his Miranda rights which Williamson acknowledged and waived. The officer then asked Williamson's name. Williamson responded "Christopher Columbus." At the police station, Officer Frantz again asked Williamson his name . . . and [Williamson] again stated that he was "Christopher Columbus." An officer then took Williamson to the booking area where he was printed and photographed as a part of the booking process. Two officers then ran [Williamson's] prints through the computer to see if they could discover [Williamson's] true name. He was identified as Spartacus Williamson. Officer Frantz testified that it took approximately one half hour to forty-five minutes to find [Williamson's] true name.

Based on this finding, the trial court concluded:

> That Spartacus Williamson is guilty beyond a reasonable doubt of the crime of Obstructing a Public Servant, in that, on December 7, 1994, he: gave a false name to a police officer on two occasions and refused to give his true name. Two Tacoma Police Officers were hindered and delayed in their jobs while they worked to determine from his fingerprints what [Williamson's] true name [was].

## I

### THE INFORMATION

Williamson challenges the information for the first time on appeal, contending that it did not provide him with

sufficient notice of the legal elements and factual circumstances of the obstruction charge. Specifically, he argues that the State erred (1) by charging him with violating a statute that has been repealed, and (2) by charging him with a means of committing obstruction that was inapplicable to the facts.

▪ A charging document is generally constitutionally sufficient if it notifies a criminal defendant of the nature of the accusation with reasonable certainty, thereby permitting the defendant to develop a proper defense and to offer any resulting judgment as a bar to a second prosecution for the same offense. *State v. Davis*, 60 Wn. App. 813, 816, 808 P.2d 167 (1991), *aff'd*, 119 Wn.2d 657 (1992). When a statute sets forth alternative means by which a crime can be committed, the charging document may charge none, one, or all of the alternatives, provided the alternatives charged are not repugnant to one another. *State v. Noltie*, 116 Wn.2d 831, 842, 809 P.2d 190 (1991); *State v. Severns*, 13 Wn.2d 542, 548, 125 P.2d 659 (1942); *State v. Bray*, 52 Wn. App. 30, 34, 756 P.2d 1332 (1988). If the information alleges only one alternative, however, it is error for the factfinder to consider uncharged alternatives, regardless of the strength of the evidence presented at trial. *Bray*, 52 Wn. App. at 34 (holding that trial court committed prejudicial error when it instructed jury on uncharged alternative means of committing forgery); *see Severns*, 13 Wn.2d at 548; *State v. Doogan*, 82 Wn. App. 185, 188, 917 P.2d 155 (1996).

▪ When reviewing an information that is first challenged after entry of the verdict, the appellate court engages in a two-pronged analysis. *State v. Kjorsvik*, 117 Wn.2d 93, 105-06, 812 P.2d 86 (1991). First, if the information does not state all elements of the crime, the court determines whether it contains any language, or reasonable inferences, that would give the accused notice of the missing element or elements. *Kjorsvik*, 117 Wn.2d at 106. If there is some language, but it is vague, the court then considers whether the defendant has shown actual prejudice from the defect. *Kjorsvik*, 117 Wn.2d at 106.

In charging Williamson with "Obstruction of a Public Servant," the State relied upon the language of former RCW 9A.76.020 (LAWS OF 1975, 1st Ex. Sess. ch. 260). That statute provided:

> Every person who, (1) without lawful excuse shall refuse or knowingly fail to make or furnish any statement, report, or information lawfully required of him by a public servant, or (2) in any such statement or report shall make any knowingly untrue statement to a public servant, or (3) shall knowingly hinder, delay, or obstruct any public servant in the discharge of his official powers or duties; shall be guilty of a misdemeanor.

Former RCW 9A.76.020 (LAWS OF 1975)

In 1982, the Supreme Court invalidated sections (1) and (2), holding that they were unconstitutionally vague. *State v. White*, 97 Wn.2d 92, 101, 640 P.2d 1061 (1982). Consequently, in several instances, prosecutors charged persons who gave officials false names or information with obstruction under section (3). Relying on *White*, reviewing courts rejected this approach. *State v. Hoffman*, 35 Wn. App. 13, 16, 664 P.2d 1259 (1983); *State v. Swaite*, 33 Wn. App. 477, 483, 656 P.2d 520 (1982). The *Hoffman* and *Swaite* courts concluded that the Legislature had intended sections (1) and (2) to specifically address *false and misleading statements*, while it intended section (3) to prohibit *conduct* that hindered, delayed or obstructed. Accordingly, these courts rejected the arguments that section (3) punished false and misleading statements as well as obstructive conduct. *See Hoffman*, 35 Wn. App. at 16 (no probable cause to arrest under constitutional portion of obstruction statute for refusing to provide identification); *Swaite*, 33 Wn. App. at 483 (police unlawfully arrested defendant for obstruction after he gave them false information); *see also State v. Grant*, 89 Wn.2d 678, 685-86, 575 P.2d 210 (1978) (holding that predecessor to former RCW 9A.76.020(3) (LAWS OF 1975) focused on conduct other than speech).

The Legislature then amended the statute, effective

June 1994, and renamed the offense "Obstructing a law enforcement officer." Former RCW 9A.76.020 (Laws of 1994 ch. 196, § 1, eff. June 9, 1994).[2] The amended statute omitted the unconstitutional sections and created two new alternative means of committing the offense:

(1) A person is guilty of obstructing a law enforcement officer if the person:

(a) Willfully makes a false or misleading statement to a law enforcement officer who has detained the person during the course of a lawful investigation or lawful arrest; or

(b) Willfully hinders, delays, or obstructs any law enforcement officer in the discharge of his or her official powers or duties.

(2) "Law enforcement officer" means any general authority, limited authority, or specially commissioned Washington peace officer or federal peace officer . . . .

(3) Obstructing a law enforcement officer is a gross misdemeanor.

Former RCW 9A.76.020 (Laws of 1994). The amended statute was in effect at the time that Williamson was charged.

■ The information here does not satisfy the first prong of the *Kjorsvik* test. It stated that Williamson committed the alleged crime by "hinder[ing], delay[ing] or obstruct[ing]" the police officers. Under the above interpretations of the obstruction statute, this allegation describes *conduct,* not speech. But the record clearly establishes that the State proved the offense by showing that Williamson gave *false statements* to the police — twice stating that his name was "Christopher Columbus." In its opening statement, the State said that it would show Wil-

---

[2]The Legislature adopted a new obstruction statute prohibiting the provision of false information during a police investigation in 1995. RCW 9A.76.175 (Laws of 1995, ch. 285, § 32, eff. July 1, 1995) provides in relevant part:

"A person who knowingly makes a false or misleading material statement to a public servant is guilty or a gross misdemeanor. "Material statement" means a written or oral statement reasonably likely to be relied upon by a public servant in the discharge of his or her official powers or duties."

liamson "hindered, delayed [and] obstructed" the police by falsely identifying himself as "Christopher Columbus." And in its findings of fact, the trial court referred to Williamson's false statements. Thus, the trial court either improperly characterized Williamson's false statements as conduct under former RCW 9A.76.020(1)(b) (LAWS OF 1994) or convicted Williamson for making false statements under former RCW 9A.76.020(1)(a) (LAWS OF 1994), an uncharged alternative means of committing the offense.

■ The State contends that its citation to the repealed version of former RCW 9A.76.020(3) (LAWS OF 1975) was a harmless clerical error. *State v. Vangerpen*, 125 Wn.2d 782, 787-88, 888 P.2d 1177 (1995); *see* CrR 2.1(a)(1) (errors in the citation in an information are not grounds for reversal of a conviction if the error did not prejudice the defendant). This argument, however, mischaracterizes the magnitude of the problem. The information not only cites the wrong numerical statutory section, it also quotes language describing an inapplicable means of committing the crime.

■ Nor are we persuaded by the State's argument that the response, "Christopher Columbus," was conduct, not speech. It clearly fit within alternative (2) of former RCW 9A.76.020 (LAWS OF 1975); a "knowingly untrue statement." The State's approach would improperly blur the *White* court's distinction between speech and conduct, a distinction critical to its constitutional analysis.

■ As the information did not provide Williamson with notice of the legal elements necessary to convict him of this offense, we do not address the second *Kjorsvik* prong. Prejudice is presumed. Thus, we must reverse the obstruction conviction.

## II

### SUFFICIENCY OF THE EVIDENCE

Williamson next contends that the record does not

contain sufficient evidence to support either conviction. Evidence is sufficient to support a conviction if, viewed in the light most favorable to the prosecution, it is enough to permit any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Green,* 91 Wn.2d 431, 442-43, 588 P.2d 1370 (1979); *State v. Luna,* 71 Wn. App. 755, 758, 862 P.2d 620 (1993) (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). Circumstantial evidence is considered equally as reliable as direct evidence. *State v. Delmarter,* 94 Wn.2d 634, 638, 618 P.2d 99 (1980). Credibility determinations are for the trier of fact. *State v. Camarillo,* 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

### A. Obstruction of a Law Enforcement Officer

As we decided the challenge to the obstruction conviction on the basis of the defective information, we do not address the challenge to the sufficiency of the evidence supporting that conviction.

### B. Minor in Possession of a Firearm

To prove that Williamson was a minor in possession of a firearm, the State needed to show that Williamson was under the age of 18 and that he had possession or control of a firearm. RCW 9.41.040(1)(e). Williamson does not contest his status as a minor and the evidence is sufficient to prove possession.

To prove the charge, the State presented the dispatcher's report of an altercation involving a handgun and a description of the two suspects, evidence that Williamson's appearance matched the description provided by the dispatcher and that Williamson was discovered near the scene; Frantz's observation of Williamson holding a silver object and ducking into the hedge; and a description of the discovery of the silver handgun in the hedge. Viewing this evidence and logical inferences in the light most favorable to the State, a reasonable factfinder could conclude be-

yond a reasonable doubt that Williamson had actual possession of a handgun just before his arrest.

Accordingly, we affirm the conviction for minor in possession of a handgun. We reverse the conviction for obstructing a public servant without prejudice to the State's right to file new charges and retry Williamson for this offense. *See Vangerpen*, 125 Wn.2d at 791.

BRIDGEWATER and ARMSTRONG, JJ., concur.