IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 77022-5-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| HENRY LEE JACKSON IV, | ) | UNPUBLISHED OPINION |
| Appellant. | ) | FILED: December 10, 2018 |

SMITH, J. — Henry Lee Jackson IV appeals his convictions for domestic violence felony violation of a no-contact order, first degree criminal impersonation, resisting arrest, and escape from community custody. He contends the prosecutor committed reversible misconduct by eliciting improper testimony from a witness and that defense counsel was ineffective for failing to object to that and other improper testimony. He also contends there was insufficient evidence to support his conviction for criminal impersonation because there was no evidence that he committed an act using an assumed identity. We conclude prosecutorial misconduct could have been cured by an instruction to the jury, the failure to object to the improper testimony could be characterized as a legitimate trial tactic, Jackson cannot show prejudice, and cumulative error did not deprive him of a fair trial. Viewing the evidence in the light most favorable to the State, there is sufficient evidence to support the jury finding that Jackson

assumed his brother's identity and then committed acts to avoid detection of his true identity and arrest. We affirm.

FACTS

On February 15, 2017, C.C. called 911 because she could hear a man, later identified as Henry Lee Jackson IV, yelling at a woman. While on the phone with a 911 operator, C.C. saw Jackson hit the woman, pull the woman's hair, and choke the woman at a nearby bus stop. C.C. narrated the events to the 911 operator as they were happening.

When police officers arrived, Jackson identified himself as his brother, William Jackson, and gave the officers his brother's name, birthdate, and address. The victim identified Jackson to the police as Anthony Jackson. When the officers decided to arrest Jackson based on C.C.'s eye witness account of the assault, Jackson became uncooperative and had to be physically restrained and taken into custody. During a search at the Whatcom County Jail, officers found Jackson's identification card and learned his true identity. Officers then discovered that there was a no-contact order between Jackson and the victim.

The State charged Jackson by amended information with domestic violence felony violation of a no-contact order, first degree criminal impersonation, resisting arrest, and escape from community custody. The escape from community custody charge was bifurcated from the other charges for trial.

At the trial for the first three charges, both C.C. and her husband testified. Additionally, the trial court admitted two of C.C.'s 911 calls into evidence. The

officers who responded to the scene also testified, and the trial court allowed the State to play selected recordings from the officers' body cameras at the trial. The jury found Jackson guilty on all three charges. Jackson was also found guilty of escape from community custody by a second jury. The trial court sentenced Jackson on all counts. Jackson appeals.

## PROSECUTORIAL MISCONDUCT

Jackson argues the prosecutor committed reversible misconduct by eliciting irrelevant and inflammatory testimony from C.C. about her reaction to the assault. But because defense counsel did not object, and the error could have been cured by an instruction to the jury, we disagree.

"To prevail on a claim of prosecutorial misconduct, the defendant must establish 'that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial.'" State v. Thorgerson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011) (quoting State v. Magers, 164 Wn.2d 174, 191, 189 P.3d 126 (2008)). "If the defendant did not object at trial, the defendant is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." State v. Emery, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012) (citing State v. Stenson, 132 Wn.2d 668, 727, 940 P.2d 1239 (1997)). "Under this heightened standard, the defendant must show that (1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" Emery, 174 Wn.2d at 761 (quoting Thorgerson, 172 Wn.2d at 455).

Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." ER 401. Relevant evidence is admissible unless a rule of law prohibits its admission. ER 402. ER 403 prohibits the trial court from admitting relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice." Unfair prejudice is prejudice that is more likely to arouse an emotional response than a rational decision from the jury and that suggests a decision on an improper basis. State v. Cronin, 142 Wn.2d 568, 584, 14 P.3d 752 (2000). A trial is not fair when irrelevant and inflammatory matter, which has a natural tendency to prejudice the jury against the accused, is introduced. State v. Miles, 73 Wn.2d 67, 70, 436 P.2d 198 (1968).

Here, the prosecutor asked C.C. about her reaction to the assault:

Q. How did it, how did you react to this? How did it make you feel?
A. Oh, it was traumatizing for me to see it happen. It was, I cried for that woman all night long. It's just, it's not okay to hurt people. It's just not okay, and it, it was hard to watch. It was hard to witness from beginning to end, including the officers and everything that happened at the very end when he was being arrested. It was very traumatizing.[1]

Defense counsel did not object.

The prosecutor's question and C.C.'s response were not relevant to Jackson's guilt or to any element of the charged crimes. Furthermore, the response was unfairly prejudicial in that it likely aroused an emotional response by the jury. But asking the improper question did not rise to the level of conduct

---

[1] Report of Proceedings (RP) (May 2, 2017) at 24.

4

that the courts have previously held to be so flagrant and ill intentioned that it could not have been cured by an instruction. See, e.g., State v. Belgarde, 110 Wn.2d 504, 755 P.2d 174 (1988) (reversible error where prosecutor stated that defendant was associated with an organization of madmen who kill indiscriminately); State v. Monday, 171 Wn.2d 667, 257 P.3d 551 (2011) (reversible error where prosecutor imputed an "antisnitch" code to black witnesses only); In re Pers. Restraint of Glasmann, 175 Wn.2d 696, 702, 286 P.3d 673 (2012) (plurality opinion) (reversible error where prosecutor altered defendant's booking photograph with the addition of phrases such as "'GUILTY'" superimposed three times in an "X" shape over defendant's face in red letters); State v. Walker, 182 Wn.2d 463, 341 P.3d 976 (2015) (reversible error where the prosecutor presented Microsoft PowerPoint slides showing admitted exhibits altered with inflammatory text that expressed a personal opinion on defendant's guilt). Likewise, any prejudice resulting from C.C.'s response to the prosecutor's improper question could have been cured by an instruction to the jury to disregard C.C.'s response. Therefore, reversal is not warranted.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Jackson argues that he received ineffective assistance of counsel because defense counsel failed to object to C.C.'s testimony about both her reaction to the assault and the victim's demeanor. We disagree.

A criminal defendant has the right to effective assistance of counsel under the Sixth Amendment to the United States Constitution and article I, section 22 (amend. X) of the Washington State Constitution. State v. Hendrickson, 129

Wn.2d 61, 77, 917 P.2d 563 (1996). "To prove that failure to object rendered counsel ineffective, [a defendant] must show that not objecting fell below prevailing professional norms, that the proposed objection would likely have been sustained, and that the result of the trial would have been different if the evidence had not been admitted." In re Pers. Restraint of Davis, 152 Wn.2d 647, 714, 101 P.3d 1 (2004) (citing State v. Townsend, 142 Wn.2d 838, 847, 15 P.3d 145 (2001); State v. McFarland, 127 Wn.2d 322, 337 n.4, 899 P.2d 1251 (1995); Hendrickson, 129 Wn.2d at 80) (footnotes omitted). "The decision of when or whether to object is a classic example of trial tactics." State v. Madison, 53 Wn. App. 754, 763, 770 P.2d 662 (1989). For example, trial counsel may decide not to object to avoid emphasizing the objectionable testimony. Davis, 152 Wn.2d at 714. "Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal." Madison, 53 Wn. App. at 763.

Here, Jackson argues that defense counsel was ineffective by failing to object to C.C.'s testimony about the victim's demeanor. C.C. testified that the victim "seemed so empty and just so sad and like somebody who has been through this a time or two before."[2] A witness may only testify in terms that include inferences or conclusions based on personal knowledge. ER 701; State v. Wigley, 5 Wn. App. 465, 468, 488 P.2d 766 (1971). C.C.'s statement that the victim looked like someone who had been through this before was speculative and therefore improper. It was also prejudicial because it implied that the victim

---

[2] RP at 35.

6

had been the victim of past domestic violence. ER 404(b) bars the admission of evidence of a prior bad act "'for the purpose of proving a person's character and showing that the person acted in conformity with that character.'" State v. Gunderson, 181 Wn.2d 916, 922, 337 P.3d 1090 (2014) (quoting State v. Gresham, 173 Wn.2d 405, 420, 269 P.3d 207 (2012)). To guard against the high risk of unfair prejudice in domestic violence cases, courts confine the admissibility of prior acts of domestic violence to cases where the State has established their overriding probative value. Id. at 925. And, as discussed, C.C.'s testimony about her own reaction to the assault was irrelevant and prejudicial. Nevertheless, Jackson cannot show the failure to object was not a strategic decision or that the outcome of the trial would have been different had defense counsel objected.

Defense counsel's decision not to object to this testimony can be characterized as a legitimate trial strategy. C.C. testified about the victim's demeanor right after the jury heard the second 911 call from C.C. During these calls, C.C. described the abuse that she witnessed as it was happening. An objection to C.C.'s testimony could have emphasized the content of those calls. Similarly, defense counsel may not have wanted to emphasize C.C.'s emotional response to the assault by objecting to her testimony.

Jackson also cannot demonstrate that there is a reasonable probability that the result of the trial would have been different had defense counsel objected. There was overwhelming evidence of Jackson's guilt, including the content of the 911 calls and the testimony from C.C., her husband, and the

responding officers. Therefore, Jackson fails to demonstrate ineffective assistance of counsel.

## CUMULATIVE ERROR

Jackson argues that the cumulative effect of C.C.'s improper testimony about her own emotional reaction and the victim's demeanor resulted in an unfair trial. We disagree.

The cumulative error doctrine applies when several trial errors occur that "standing alone may not be sufficient to justify reversal but when combined may deny a defendant a fair trial." State v. Greiff, 141 Wn.2d 910, 929, 10 P.3d 390 (2000). It does not apply where the errors are few and have little or no effect on the outcome of the trial. Id.

As described above, C.C.'s testimony about her reaction to the assault and the victim's demeanor was improper. But it is unlikely that the improper testimony, even combined, denied Jackson a fair trial. The evidence of Jackson's guilt was overwhelming, and it is unlikely that these errors had any effect on the outcome of the trial. Therefore, reversal is not appropriate.

## SUFFICIENCY OF THE EVIDENCE

Jackson contends insufficient evidence supports his conviction for first degree criminal impersonation under RCW 9A.60.040(1)(a). He argues that the State only proved he verbally assumed a false identity, but not that he committed an "act" in his assumed character, as required by that statute. We disagree.

In determining the sufficiency of the evidence, we view the evidence in the light most favorable to the State and determine whether any rational trier of fact

8

could have found the essential elements of the crime beyond a reasonable doubt. State v. Townsend, 147 Wn.2d 666, 679, 57 P.3d 255 (2002). A challenge to the sufficiency of the evidence admits the truth of the evidence. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992) (citing State v. Theroff, 25 Wn. App. 590, 593, 608 P.2d 1254, aff'd, 95 Wn.2d 385, 622 P.2d 1240 (1980)). Further, "all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." Id. (citing State v. Partin, 88 Wn.2d 899, 906-07, 567 P.2d 1136 (1977), overruled on other grounds by State v. Lyons, 174 Wn.2d 354, 275 P.3d 314 (2012)).

Statutory interpretation is a matter of law that we review de novo. Jametsky v. Olsen, 179 Wn.2d 756, 761, 317 P.3d 1003 (2014). The primary goal of statutory interpretation is to determine and give effect to the legislature's intent. Id. at 762. To determine legislative intent, we first look to the plain language of the statute. Id. "We may use a dictionary to discern the plain meaning of an undefined statutory term." Nissen v. Pierce County, 183 Wn.2d 863, 881, 357 P.3d 45 (2015).

Under RCW 9A.60.040(1)(a), a person is guilty of criminal impersonation in the first degree if the person "[a]ssumes a false identity and does an act in his or her assumed character with intent to defraud another or for any other unlawful purpose." That statute does not define the term "act." The dictionary defines "act" as "a thing done or being done : DEED, PERFORMANCE" and "an external

9

manifestation of the will : something done by a person pursuant to his volition." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 20 (2002).

Here, sufficient evidence supports the jury conviction of criminal impersonation. Officer Aspessi, one of the responding officers, testified that when he first arrived on the scene, Jackson and the victim were sitting at the bus stop. He testified that he took Jackson aside and began questioning him. The court also allowed the State to play several recordings from Officer Aspessi's body camera showing part of his interaction with Jackson. In one recording, Jackson tells Officer Aspessi that he has been dating the victim for about six months. When asked if he has any identification, Jackson responds that he does not. Officer Aspessi then asks Jackson for his name. Jackson responds, "'Uh'" and Officer Aspessi says, "'What's your real name?'"[3] Jackson then says his name is William, and Officer Aspessi says, "'William what? Why—do you have warrants out? Is that why you were kind of hesitating?'"[4] Jackson then gives the officer his brother's full name, birthdate, and address.[5] Officer Aspessi later informed Jackson that he was under arrest for domestic violence assault because a witness saw him assault the victim at the bus stop. In another body camera recording, Jackson argues with Officer Aspessi saying, "'I'm not going'" and "'No, you said I checked out. I was cool, right?'"[6] Officer Aspessi also testified that when he told Jackson he was under arrest, Jackson "went from a

---

[3] RP at 132.
[4] RP at 132.
[5] RP at 132-33.
[6] RP at 137.

10

seated position and leaped up onto the bench in the bus stop, and in so many words said that he wasn't going to go with us."[7] Officer Jeremy Woodward, the other responding officer, testified that 40 or 45 minutes elapsed from the officers' initial contact with Jackson until they discovered his true identity. And during that time, Jackson continued to portray himself as his brother and did not correct the officers' misconception as to his actual identity.

Jackson argues that none of the evidence demonstrates he performed an "act" in his assumed identity under RCW 9A.60.040. But viewing the evidence in the light most favorable to the State, the evidence described above is sufficient for a jury to conclude that Jackson performed an act in his assumed identity. Specifically, Jackson assumed his brother's identity by giving police his brother's name so the officers would not discover that there was a no-contact order between him and the victim and arrest him for violation of that order or for domestic violence assault. After he told the officers that his name was William, Jackson did, pursuant to his volition, several things in his assumed character to mislead the officers and avoid arrest. For example, he gave the officers his brother's birthdate and address, he insisted that he had "checked out" when the officers told him he was under arrest, and he physically jumped up on a bench in response to the arrest. These external manifestations of his will to avoid arrest while representing to the police that he was his brother constituted sufficient evidence for the jury to find that Jackson performed an "act" in his assumed character. Accordingly, the conviction must be affirmed.

---

[7] RP at 136.

Jackson contends that State v. Williamson, 84 Wn. App. 37, 924 P.2d 960 (1996), requires his conviction be reversed. That case involved a former version of the obstructing-a-police-officer statute. The relevant section of that statute made it unlawful for a person to "'[w]illfully hinder[], delay[], or obstruct[] any law enforcement officer.'" Id. at 44 (quoting former RCW 9A.76.020 (LAWS OF 1994, ch. 196, § 1)). Courts had concluded that the legislature intended this section of the statute to criminalize conduct, not false and misleading *statements*. Id. at 43 (citing State v. Hoffman, 35 Wn. App. 13, 16, 664 P.2d 1259 (1983); State v. Swaite, 33 Wn. App. 477, 483, 656 P.2d 520 (1982)).[8] In Williamson, the defendant verbally told police officers his name was "'Christopher Columbus,'" and there was no evidence of conduct by the defendant outside of this false statement. Id. at 44-45. Accordingly, the Court of Appeals held that the State had failed to prove an offense under the relevant section of the obstructing-a-police-officer statute. Id. at 45.

Jackson asserts that like the defendant in Williamson, he engaged solely in speech, not conduct, and thus his conviction must be reversed under Williamson. But Williamson is distinguishable for two reasons. First, although the defendant in Williamson made it difficult for the police to identify him, requiring the police to do so through his fingerprints, he did not pretend to be Christopher Columbus. Id. at 40. By contrast, Jackson misled the police by assuming the identity of his brother and acting as if he was his brother to avoid

---

[8] False and misleading statements were criminalized under a different section of the statute but were invalidated because they were unconstitutionally vague. Williamson, 84 Wn. App. at 43.

12

arrest for domestic violence assault. Second, and more importantly, <u>Williamson</u> is distinguishable because there is no indication that the legislature intended the "act" required in the criminal impersonation statute to exclude false statements, as there was under the former obstructing-a-police-officer statute. Because there was sufficient evidence that Jackson performed at least one "act" in his assumed identity, his conviction must stand.

We affirm.

_Smith, J._

WE CONCUR:

_Schindler, J._

_Becker, J._

FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON
2018 DEC 10 AM 9:04